## No. 12,352.

### BROWN v. DRIVERLESS CAR COMPANY.

Decided June 24, 1929. Rehearing denied September 23, 1929.

Mr. WALDO RIFFENBURG, for plaintiff in error.

Mr. JAMES R. HOFFMAN, Mr. CARLOS A. RICHARDSON, for defendant in error.

*In Department.*

MR. JUSTICE ADAMS delivered the opinion of the court.

THE Driverless Car Company, a Colorado corporation, brought replevin against Brown and others, before a justice of the peace in Weld county, to recover possession of an automobile. Judgment was for defendants. Plaintiff, hereinafter called Driverless, appealed to the county court, where trial was had to a jury with verdict and judgment in its favor. Defendant Brown brings the case here and asks for a supersedeas. The other defendants have dropped out of the scene as parties, but not as witnesses.

The record title to the automobile in question shows the following: June 3, 1927, ownership in Allen E. Thomas, subject to an encumbrance of $241.72 in favor of Driverless Car Company. November 30, 1927, transfer of title, warranted free of all liens, from Allen E. Thomas to E. R. Hopper Motor Co. December 24, 1927, "Re-assignment by licensed dealer to individual," a transfer of title, warranted free of all liens, from E. R. Hopper Motor Co. to Henry I. Brown, the defendant herein.

Plaintiff's chattel mortgage is dated and acknowledged June 3, 1927, and was filed on June 13, 1927, in the office of the county clerk and recorder of the City and County of Denver. There was a balance of $145 due from Thomas to Driverless, represented by the mortgage, at the time the action was commenced. Possession of the car was taken from Brown under the writ of replevin in April, 1928. Plaintiff claims by virtue of the mortgage. Brown claims to be an innocent purchaser for value without actual notice, and that plaintiff consented to a sale of the car. Additional facts will be stated in the opinion.

 1. The general rule is that upon a failure of the

mortgagor of chattels to perform the conditions, the mortgagee may maintain replevin to recover possession of the property. Wells on Replevin (2d Ed.), page 184, §222a.

2. On the other hand, if the mortgagee consents, expressly or impliedly, that possession of chattels shall be or remain in the mortgagor with power of sale, it makes the mortgage void as to third parties. *Wilson v. Voight,* 9 Colo. 614, 13 Pac. 726; *McLagan v. Granato,* 80 Colo. 412, 414, 252 Pac. 348; *Moore v. Ellison,* 82 Colo. 478, 480, 481, 261 Pac. 461.

There is a striking similarity between the two last named cases and the one before us. All three relate to automobiles; in each instance the record shows that they were covered by chattel mortgages filed or recorded in the office of a county clerk and recorder; and in all of them the cars were purchased after they had been displayed in the show rooms of automobile dealers. Driverless, the mortgagee, slept on its rights while the car in question went through the transition of two sales, first, from Thomas to Hopper, and second, from Hopper to defendant Brown. The car was a second-hand Ford, which Thomas traded in with Hopper on the price of a new car. Thomas notified Driverless in the latter part of November, 1927, of his sale or trade of the mortgaged car to Hopper, and Reynolds, manager for Driverless, admits that he consented to the sale. Reynolds further stated that Hopper promised to pay him and that Thomas was to pay Hopper.

3. The fact that Reynolds consented to the sale to Thomas shortly after such sale, and not before, is immaterial. We do not know whether or not Reynolds gave his express consent to the later sale of the Ford to the defendant Brown, at the time that such sale was made. We may assume that Reynolds did not do so, but he did know that Hopper was a dealer in automobiles, and Driverless, through its manager, Reynolds, was thus charged with notice that Hopper's business, besides that

of selling new cars, was to get rid of cars taken in trade, and not to keep accumulating them in dead storage; that a show room display, or road demonstration, for the purpose of attracting sales, was a constant and daily incident to that business; that a *sale* was the natural and inevitable consequence, and that Brown or any one else of the buying public might be expected to be the purchaser.

Driverless clothed Hopper with full indicia of ownership; it expressly consented to the sale from Thomas, the mortgagor, to Hopper, the dealer, and impliedly consented to the sale from Hopper to defendant Brown. Automobiles are indispensable; the industry doubtless ranks among the greatest of the world, and fidelity to the public demands the application of the old rule, stated in *Moore v. Ellison, supra,* and again in *Federal Acceptance Corporation v. Dillman,* 82 Colo. 598, 600, 262 Pac. 85, that ''Where one of two innocent persons must suffer loss because of the fraudulent act of a third person, the law places the loss upon the one who put it in the power of the third person to commit the fraud.''

4. The issue in replevin is the right to immediate possession at the time when the action is commenced, dependent, in this case, on title to the automobile. Notwithstanding this much of the evidence produced took an odd turn. It consisted largely of a controversy between Driverless and its witnesses, on the one side, and Hopper and his friends on the other, as to whether Hopper had promised to pay Driverless the unpaid balance that was originally covered by the chattel mortgage. Driverless took the affirmative, but was doubtless unconscious of the fact that its own position thus lent corroboration to a conclusion that Driverless looked to Hopper or E. R. Hopper Motor Co. personally to pay such balance, instead of relying on the mortgage security. Reynolds testified that he tried for six months to collect from Hopper before Driverless brought replevin. This fact alone did not necessarily in itself show a waiver of the

lien, but it did not help to establish it. The fact that Driverless delayed in asserting its lien, and gave its consent to the sale, is more to the point. This is not an action by Driverless to recover the chattel or damages from Hopper or his company. Their controversy as to such matter is foreign to the issue.

5. Brown was a stranger to the private negotiations about money, between Driverless and Hopper. Such transactions did not affect Brown's rights. In *McLagan v. Granato, supra,* as stated on page 414 of that opinion, McLagan, the mortgagee, made some kind of an arrangement with Olson, the retail dealer, by which Olson might sell the mortgaged cars by payment on each sale of a proportionate part of the mortgaged note, but such arrangement did not defeat the rights of the innocent purchaser, Granato. The same rule will be applied here as to Brown's rights.

6. Counsel for Driverless invoke the principle that judgments will not be reversed on conflicting evidence, but it has no application. There is no conflict of evidence in any essential particular. In fact, most of the testimony that condemns plaintiff's case comes from the lips of its own witnesses. Much of it was elicited on cross-examination, and it is corroborated by defendants in material matters. It was prejudicial error to refuse Brown's motion for a directed verdict. The judgment will, therefore, be reversed, with directions to enter judgment in his favor.

Mr. Chief Justice Whitford, Mr. Justice Alter and Mr. Justice Campbell concur.