No. 15,221.

HOFMANN *v.* LAMB
(160 P. [2d] 995)

Decided July 2, 1945.

Messrs. SCHAETZEL & KNIGHT, for plaintiff in error.

Mr. CASS M. HERRINGTON, for defendant in error.

*En Banc.*

Mr. Justice Knous delivered the opinion of the court.

The action herein involved is in replevin. The proceeding was instituted below by defendant in error, hereinafter designated as plaintiff, against C. Lee Hoffman for the possession or value of two Marine engines; one of six-cylinders and the other of four, with certain accessories. By reason of plaintiff's election to not file an undertaking in replevin, no writ was issued and the sheriff made no attempt to take possession of either of said motors in advance of judgment. Before issue was joined, upon motion of C. Lee Hoffman, Caspar Hofmann, plaintiff in error, was made a party defendant. Due to the similiarity in the surnames of the original and interpleaded defendants, who, however, are without consanguinity, we shall refer to C. Lee Hoffman as the boatmaker and to Caspar Hofmann as the defendant. The answer of the boatmaker controverted plaintiff's claim to possession of the four-cylinder motor, while that of defendant raised such issue as to the six-cylinder motor. At the trial verdicts for the plaintiff were returned on both phases of the case. Subsequently defendant's motion for new trial was overruled, and it appearing to the court's satisfaction that the delivery of the six-cylinder motor was not feasible, a money judgment for the value thereof, $481.25, was found by the jury, plus interest, was entered against defendant, who brings the case here for review. The boatmaker is not a party to this proceeding in error and presumptively plaintiff by his action secured possession of the four-cylinder motor, the value of which as fixed by the jury was $356.00.

In November, 1938, the boatmaker, who operated a custom shop near Sloan's Lake, Denver, entered into a written agreement to build a power boat for defendant for the sum of $1185.00 (subsequently fixed at $1360.00),

to be paid fifty per cent down; twenty-five per cent when the hull was finished, and the balance upon completion of the boat and its acceptance by defendant. On December 15, defendant made a down payment of $650.00, followed by payments of $325.00 on April 27, 1939; $200.00 on July 22 and $100.00 on August 15, a total of $1275.00. The contract specified that all materials, including the motor, should be provided by the boatmaker.

Coincidentally, late in 1938 or early in 1939, the boatmaker and plaintiff arrived at a verbal understanding for the construction of another boat for the latter, the exact size and cost of which were to be determined and agreed upon as the work progressed. By way of advance therefor plaintiff paid the boatmaker $500.00 in January, 1939, and in March following paid him an additional $100.00.

In January, 1939, the boatmaker, in his name, ordered from a manufacturer the two motors herein involved; the four-cylinder job for plaintiff's boat, and the other for installation in defendant's boat. Plaintiff knew at the time, that the six-cylinder motor was ordered for placement in a boat in construction for another on a contract calling for periodical payments, but did not learn until about May 1st that such person was the defendant nor, until shortly before suit, of the precise plan for payment provided. Early in May, 1939, the motors, which had been shipped C. O. D. on sight draft for about $587.00, arrived in Denver. At about this time, as related by plaintiff, he was advised over the telephone by the boatmaker that the two motors were due to arrive shortly; that he did not have enough funds to cover the sight draft and requested plaintiff to advance an amount sufficient therefor; that in personal conversations between the two within the next few days, plaintiff upon the basis that construction on his boat had not so much as started, protested against advancing so much additional money, and asked the boatmaker why he did not obtain the

money for the motors from his other customer (defendant), whose boat was in the process of fabrication, to which the boatmaker replied that he had so attempted but that defendant had stated, "he was keeping up the payments in accordance with contract and didn't feel called upon to make further advances." That plaintiff suggested that if he made the advance he should "be given a bill of sale for both motors so I would have security to show for the moneys." Finally, on May 5, plaintiff gave the boatmaker a check for $575.00.

On May 10, the boatmaker executed and delivered a bill of sale to plaintiff, also signed by the latter, in which the two motors and accessories were specifically and accurately described. The bill of sale, which was prepared under the direction of plaintiff, was absolute in form and recited the consideration as $675.00, computed, as plaintiff testified, by the addition of the $575.00 advanced on the 5th and the $100.00 which, as hereinabove stated, plaintiff had paid to the boatmaker in the March previous, upon the basis that the latter had been a loan rather than a payment on the boat in contemplation. At the time the bill of sale was given both motors were located in the boatmaker's shop. The instrument was not acknowledged and never was filed or recorded. No delivery of the motors to plaintiff was made then or afterwards. On the witness stand plaintiff admitted that at the time he took the bill of sale he had the expectation that the six-cylinder motor would be installed in the boat under construction for defendant. The understanding attending the delivery of the bill of sale, as stated by plaintiff, was: "At the time that I put up the $575.00 to pay the balance of the purchase price of these two motors it was agreed betwen me and the boatmaker "I would be repaid that $575.00 when" the boatmaker received his next payment from defendant, "which was to be about two weeks from that time, or at the time he finished the woodwork on the boat he was working on." The boatmaker testified that he

gave plaintiff the bill of sale "in case anything happened to me he would have insurance to protect him; not for any consideration or any money, but it was just in case anything happened to me," and further stated that he did not know the six-cylinder motor was included in the bill of sale until after he had signed the same. As will appear, defendant had no notice or knowledge of this transaction until the middle of August.

Subsequent to the giving of the bill of sale, the six-cylinder motor and accessories were installed in defendant's boat. Plaintiff, who was a frequent visitor at the boatmaker's shop, estimated the time of such installation as being about three weeks after the bill of sale was given, while defendant fixed the occasion as falling in the latter part of July. While the boatmaker had laid out plans for plaintiff's boat in March, it appears that he never proceeded with its actual fabrication, and in July, 1939, informed plaintiff that he was without funds to finance such construction. The four-cylinder motor ordered for plaintiff's boat continued to remain in the boatmaker's shop.

The complaint in the replevin action, which named the boatmaker as the sole defendant, was filed August 16, 1939. On that date plaintiff sent a letter to the boatmaker making "demand * * * for the immediate delivery" of the two motors and accessories "owned by the undersigned." On the same day plaintiff mailed the following communication to defendant: "I enclose herewith copy of a demand I have just made on Mr. C. Lee Hoffman. The reason I am sending you this is to put you upon notice that the engine in the boat I am informed Mr. Lee Hoffman is building for you is my property and not that of Mr. Lee Hoffman. You will also please take notice that I am starting a replevin action today to establish my ownership of the engine and my right to immediate possession thereof. Defendant testified that such was the first notification he had that plaintiff asserted any interest in the motor which had

been installed in the boat which was being constructed for him. Plaintiff testified that, in addition to the above-quoted letter of August 16, he had mentioned his claim to defendant in a conversation held the day before.

It is undisputed that subsequent to the date of the bill of sale, and prior to any notification to him whatsoever thereof, defendant paid the boatmaker $200.00 as purchase price installments on his boat. An additional $100.00 was paid on August 15, which was near the conflicting dates of notification of plaintiff's claim, but counsel for the latter seems to concede that the full $300.00 was paid on the purchase price of the boat in the interim betwen the date of the bill of sale and that of alleged notice. These payments, with those made previously, left a balance of $85.00 due on defendant's boat as of the day of suit. On that date, according to defendant's version, "the boat was practically completed * * *, probably the varnish had to be dried a little more and some detail might be yet left." Plaintiff stated that in July defendant's boat "was nearly completed," while the boatmaker said defendant "accepted delivery" the latter part of August. All agree, however, that defendant did not take his boat from the boatmaker's shop until September 20.

It also appears from uncontroverted testimony that upon the day the replevin action was instituted it would have been possible, though not without difficulty, to have removed the motor from defendant's boat. However, due to the boatmaker's refusal to deliver on plaintiff's demand and the election of the latter not to procure a writ of replevin, no separation of the motor from the boat was ever attempted, and never at any time did plaintiff secure the actual possession of the motor. The complaint alleged simply that the boatmaker "had and still has possession of the following described personalty of plaintiff [the two motors and accessories], of the value of $837.30;" "That * * * on or about the 16th day of August, 1939, plaintiff demanded possession

thereof" of the boatmaker, but that he "then and there refused * * * to deliver the same to plaintiff," and prayed judgment "for the possession of said property or the value thereof if it cannot be delivered and for damages for the detention * * * in the sum of $837.30."

On September 14th, on motion of the boatmaker as above stated, defendant was ordered to be interpleaded. The record is silent as to when, if ever, he was served with summons, but it does disclose that his answer was filed on December 14th. Therein defendant admitted the possession of the six-cylinder motor; denied plaintiff's claim thereto, and pleaded five special defenses, the affirmative phases of which were put in issue by plaintiff's replication.

As grounds for reversal defendant specifies the following points:

(1) That the court committed error in refusing to grant defendant's motion for nonsuit grounded upon the alleged failure of plaintiff to prove his right of ownership and possession; (2) that the transaction in question was no more than an attempt to create a chattel mortgage relationship between the parties which was ineffective because of failure to have the bill of sale acknowledged or placed of record; (3) that the court should have given proper instructions on the defense of estoppel; and, (4) that certain given instructions were erroneous in form and substance.

Considering the evidence and the law applicable, as hereinafter stated, we are satisfied that plaintiff failed to establish the right of recovery asserted against defendant, and that the latter's motion for a nonsuit should have been sustained. This view makes it unnecessary for us to make pronouncements on the remaining specifications of points, notwithstanding it appears that each may have substantial merit.

The transaction in consideration, being, as stated for the record by his counsel in the course of the trial, that plaintiff "had this bill of sale as security for $675.00,"

had the same legal effect as the relationships considered by us in *Andrews & Co. v. Colorado Savings Bank,* 20 Colo. 313, 36 Pac. 902, 46 Am. St. Rep. 291; *Clark v. Bright,* 30 Colo. 199, 69 Pac. 506; *Turnbull v. Cole,* 70 Colo. 364, 201 Pac. 887, 25 A.L.R., 1149, and other similar cases, and so, in the aspect most favorable to plaintiff, was nothing more and no less than a chattel mortgage. See, also section 20, chapter 32, '35 C.S.A.

■ It is well established that the consent of the chattel mortgagee that his mortgagor sell the mortgaged property to a third person and receive the proceeds, when acted upon, constitutes, as to the purchaser, a waiver of the lien of the mortgage. *Ziegler v. Ilfeld,* 52 Colo. 275, 278, 122 Pac. 56, Ann. Cas. 1913D 583. See, also, 10 Am. Jur. 843, §193. Under our holding in the foregoing case, if the mortgagor in possession disposes of the mortgaged property under authority from the mortgagee to sell and receive the proceeds, the lien is waived as to the purchaser, notwithstanding the failure of the mortgagor to pay over, or account for, the proceeds as he agreed with the mortgagee to do. As stated in section 193, 10 Am. Jur., page 843: "This is upon the theory that the lien does not follow the purchase price, and the mortgagor simply becomes liable on his promise to pay over the proceeds upon which there is no lien or trust." Citing *Hoyt v. Clemans,* 167 Ia. 330, 149 N.W. 442, L.R.A. 1915C, 166. Even if the validity of the mortgage, as against the defendant in other particulars is conceded, which in fact and law is doubtful, the plaintiff's own evidence clearly brings the case at bar within the foregoing rule of waiver, and precludes the recovery of the possession of the six-cylinder motor by him. See, also, *Brown v. Driverless Car Co.,* 86 Colo. 216, 280 Pac. 488, and *Moore v. Jacobucci,* 70 Colo. 171, 197 Pac. 1015.

It is to be noted in this connection that where, differently from the situation herein, the third party purchaser agrees that the lien of the mortgage shall continue as a valid obligation until the indebtedness is paid

and the consent of the mortgagee to a sale by the mortgagor is given on that condition, the lien is not waived unless the condition is performed. The cases of *Prather v. Auto Corporation,* 96 Colo. 516, 45 P. (2d) 628, and *Clatworthy v. Ferguson,* 72 Colo. 259, 210 Pac. 693, fall within the latter category and, of course, are not pertinent under the facts attending in the instant proceeding. This distinction also is preserved in *Arnold v. First National Bank,* 96 Colo. 104, 107, 39 P. (2d) 791, 97 A.L.R. 643.

The judgment is reversed and the cause remanded with the direction that it be dismissed.