476 P.2d 287 (1970)
The AMERICAN NATIONAL BANK OF DENVER, a National Banking Association, Plaintiff in Error,
v.
K. L. ETTER, d/b/a K. L. Etter Construction Co., and General Electric Credit Corporation, a corporation, Defendants in Error.
No. 70-174, (Supreme Court No. 24089.)
Colorado Court of Appeals, Division II.
September 9, 1970.
Rehearing Denied October 6, 1970.
*288 Dawson, Nagel, Sherman & Howard, John W. Low, David R. Johnson, Denver, for plaintiff in error.
Richard M. Huckeby, Jerry W. Uhrlaub, Grand Junction, for defendants in error.
Not Selected for Official Publication.
ENOCH, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
This appeal arises out of a replevin action initiated by The American National Bank of Denver (Bank) against Fincham Equipment Co., Inc. (Fincham), to recover possession of several heavy construction machines. K. L. Etter, d/b/a K. L. Etter Construction Co. (Etter) and General Electric Credit Corporation (G.E.) filed this action against the Bank. Etter claimed an ownership interest subject to G.E.'s claim of a chattel mortgage interest in a tractor.
The tractor was originally purchased by Etter from Fincham pursuant to a trade agreement dated September 23, 1965. Under a document dated October 1, 1965, which the trial court determined to be a chattel mortgage, Etter agreed to pay Fincham for the tractor in thirty installments. Fincham assigned his chattel mortgage interest to G.E. On October 6, 1965, the chattel mortgage instrument was recorded in Mesa County, the county of Etter's residence as well as the situs of the machine.
Etter used the tractor until January, 1967, when an agreement was made by Etter and G.E. with Fincham under which Fincham was to sell the tractor. At this time, Etter was several months behind in his payments to G.E. and still owed G.E. about $28,700. The agreement provided that Fincham was to sell the machine for at least $30,000, which amount was to be jointly realized by Etter and G.E. Any excess was to go to Fincham.
The tractor was delivered to Fincham on February 1, 1967. At that time it was inspected and the parties agreed that Fincham was to make some repairs to put the tractor in saleable condition. There was a dispute in the evidence as to who was to *289 pay for these repairs. In either case, they were not completed, nor was the tractor sold prior to instigation of this action.
The Bank had been providing floor plan financing for Fincham for several years. On July 1, 1966, the effective date of the Uniform Commercial Code, the Bank filed a financing statement covering equipment on Fincham's lot. On December 5, 1966, Fincham gave the Bank a security interest in its current and after-acquired inventory of machines by executing and delivering to the Bank a security agreement. Fincham advised the Bank on February 1, 1967, that it had acquired the tractor as part of its inventory and requested that this machine be included under its floor plan security agreement. The Bank subsequently advanced the funds to Fincham and verified that the tractor was in Fincham's possession.
John M. Fincham, the owner and operator of Fincham Equipment Co., Inc., died on March 16, 1967. At that time, his company was in default on its indebtedness to the Bank. Consequently, on March 21, 1967, the Bank initiated its replevin action to recover the tractor and other pieces of construction equipment which the Bank claimed as collateral for its loan to Fincham. Etter filed an affidavit in the replevin action claiming that he was the owner of the tractor. The trial court subsequently entered judgment for the Bank against Fincham. On May 2, 1967, Etter and G.E. initiated this action in the District Court of Adams County by filing their joint complaint asserting interests in the tractor superior to the security interest of the Bank. The case was removed to Denver District Court upon a confessed motion for change of venue. Ths trial court held the interest of the Bank in the tractor to be junior to that of Etter and G.E. Judgment was entered against the Bank jointly in favor of Etter and G.E. for $27,500, plus costs.
This appeal presents us with questions concerning the validity and priority of claims to the chattel among the various parties, that is, Etter, the owner and consignor; G.E., the holder of the outstanding chattel mortgage; and the Bank, the creditor of the consignee of the chattel.

I
The Bank claims that the trial court erred by permitting Etter and G.E. to amend their complaint under Colo.R.C.P. 15(b) at the close of the evidence. The original complaint stated:
"7. Etter consigned said tractor to Fincham on or about February 1, 1967, for the sole and only purpose of offering the same for sale, and upon the sale thereof, for delivery of the proceeds to Etter and G.E."
The amended complaint alleged:
"7. Etter delivered said tractor to Fincham on or about February 1, 1967, for the purpose of performing repair work thereon, during which time Fincham would hold said tractor as a bailee."
"7a. Upon completion of said repairs, Fincham was to attempt to find a purchaser for said tractor."
We agree with the Bank's allegation of error. The purpose of Rule 15(b) is to allow litigation to be determined on the merits and not to be limited to the strict parameters of the pleadings. However, this rule must be judiciously applied and care must be taken not to prejudice the case of either party. The question of repairs was a material and relevant issue raised under the consignment or sale theory presented in the original complaint. The Bank had no way of knowing that this minor issue would be made the basis of the theory of the case under an amended complaint. In Cady v. Fraser, 122 Colo. 252, 222 P.2d 422, the Colorado Supreme Court stated:
"While issues may properly be tried even when not pleaded, yet they must be deliberately presented and knowingly considered by the court. Counsel is not required to be on the alert to challenge every objectionable question or answer lest it be later made the basis of another claim than that intentionally and fairly tendered."
*290 The original complaint stating that the delivery to Fincham was a consignment for the sole purpose of sale was an admission which brought the transaction squarely within the terms of the Uniform Commercial Code. The amendment was a withdrawal of this admission and the introduction of an entirely different theory as an effort to escape the effect of the Uniform Commerical Code. The Bank strongly objected when the amendment was proposed and when it was granted. We hold that the Bank's claim of surprise was well founded and that the amendment should not have been allowed.

II
The trial court found that the tractor was never consigned to Fincham for sale because the repairs that were to be made were a condition precedent to sale and were never completed. For that reason, the trial court held that C.R.S.1963, XXX-X-XXX[1] did not apply. The Bank claims the trial court erred and that the provisions of the Uniform Commerical Code should have been applied. We agree with the trial court's finding that certain minor repairs were to be made by Fincham prior to placing the tractor on the sales lot. However, the overwhelming weight of the evidence indicates that these repairs were merely incidental to the dominant purpose of the delivery, that is, the sale of the machine. The clear applicability of the Code to this transaction cannot be escaped by substituting the spurious claim that the machine was delivered for repair.
The Code provides three ways by which a consignor of goods can protect his goods from the creditors of the consignee. C.R.S. 1963, XXX-X-XXX(3), (a), (b), (c). However, none of these exceptions were established in this case. In fact, the trial court specifically found that "Fincham was not generally known among his creditors to be substantially engaged in the business of selling the goods of others." Thus, we hold that it was error for the court not to have applied the Code provisions. Guardian Discount Co. v. Settles, 114 Ga.App. 418, 151 S.E.2d 530; Sussen Rubber Co. v. Hertz, 19 Ohio App.2d 1, 249 N.E.2d 65. Since the tractor was delivered to Fincham for sale and Etter failed to establish any of these exceptions, the application of the Code provisions gave the Bank an interest superior to consignor Etter.

III
Having determined that the interest of the Bank is superior to that of Etter, we must now consider the relationship between the Bank and G.E. The Bank claims that G.E.'s chattel mortgage interest in the tractor is invalid against the *291 Bank because G.E. waived its interest by consenting to the proposed sale on consignment. The Colorado Chattel Mortgage Act, C.R.S.1963, 21-1-1 et seq., is applicable in determining the rights of G.E. since the chattel mortgage was executed and recorded prior to enactment of the Uniform Commercial Code, C.R.S.1963, XXX-XX-XXX (2). Under pre-Code chattel mortgage law, the consent of a chattel mortgagee that the mortgagor sell the mortgaged property to a third party and that the mortgagor receive the proceeds, constituted a waiver of the lien of the mortgage as to the purchaser. The lien did not follow the purchase price and the mortgagor becomes liable merely on his promise to pay over the proceeds. Hofmann v. Lamb, 113 Colo. 585, 160 P.2d 995.
We do not agree with this assignment of error and hold that the above rule does not apply because the tractor was never sold to a third party. The machine was merely delivered to Fincham on consignment for sale.

IV
The Bank further claims that G.E.'s chattel mortgage interest in the tractor is invalid against the Bank because G.E. failed to record its mortgage in Adams County, the situs of Fincham's sales lot. Again the provisions of the Chattel Mortgage Act, supra, apply rather than the Uniform Commercial Code. The Bank concedes that the chattel mortgage was properly recorded in Mesa County, the residence of Etter. However, it claims that G.E. should have re-recorded in Adams County, when the machine was brought to Fincham's lot for sale.
The Colorado Chattel Mortgage Act does not contain a specific provision regarding the removal of mortgaged property. However, the filing of notice in the county where it was required to be originally filed constitutes compliance with the statute and the mortgage is valid against third parties even though not refiled in the county to which the property was subsequently removed. Rocky Mountain Seed Co. v. Mc-Arthur, 85 Colo. 1, 272 P. 1117; Walker v. Mathis, 78 Colo. 384, 242 P. 68. See Annot., 103 A.L.R. 198.

V
As a final allegation of error, the Bank claims the trial court erred in finding the value of the tractor as of March 16, 1967, to be $27,500 and in entering judgment for that amount. It claims that when sold at public auction on July 1, 1967, the machine brought $14,600 and that that price was more indicative of its value. The record shows numerous estimates by witnesses as to the tractor's value. They range from the distress sale price of $14,600 to a high of $35,000.
There is sufficient evidence in the record to sustain the trial court's finding and this court is bound by that determination, even though it is possible for reasonable men to arrive at a different conclusion based on the same facts. Whatley v. Wood, 157 Colo. 552, 404 P.2d 537.

VI
Etter and G.E. assign as cross-error their claim of insufficiency of the damage award and the court's failure to award exemplary damages. As stated above, this court is bound by the findings of the trial court where there is sufficient evidence in the record to sustain its findings. Thus, we affirm the trial court's finding that the value of the machine was $27,500.
We do not agree with the claim that exemplary damages should have been awarded. The mere taking of property under a claim of right over the protest of one in possession is not sufficient to establish grounds for exemplary damages in a conversion action. Colorado Kenworth Corp. v. Whitworth, 144 Colo. 541, 357 P.2d 626.
We hold that G.E. properly protected its chattel mortgage interest by its filing under the Chattel Mortgage Act and that Etter's interest is defeated by his failure to conform *292 to the provisions of the Uniform Commercial Code.
The judgment of the trial court as to G.E. is affirmed in the amount of $27,500 and the judgment as to Etter is reversed. The case is hereby remanded to the trial court with directions to dismiss the complaint of Etter with prejudice.
COYTE and PIERCE, JJ., concur.
NOTES
[1] "Sale on approval and sale or return consignment sales and rights of creditors. (1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:

(a) A `sale on approval' if the goods are delivered primarily for use; and
(b) A `sale or return' if the goods are delivered primarily for resale.
(2) Except as provided in subsection (3) of this section, goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.
(3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then, with respect to claims of creditors of the person conducting the business, the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as `on consignment' or `on memorandum'; however, this subsection is not applicable if the person making delivery:
(a) Complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign; or
(b) Establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others; of
(c) Complies with the filing provisions of the article on secured transactions (article 9 of this chapter)."