476 P.2d 573 (1970)
The AMERICAN NATIONAL BANK OF DENVER, a National Banking Association, Plaintiff in Error,
v.
TINA MARIE HOMES, INC., a Colorado Corporation, Defendant in Error.
No. 70-171. (Supreme Court No. 23817.)
Colorado Court of Appeals, Div. II.
September 9, 1970.
Rehearing Denied October 6, 1970.
Certiorari Denied November 30, 1970.
*574 Dawson, Nagel, Sherman & Howard, John W. Low, David R. Johnson, Denver, for plaintiff in error.
Louis A. Morrone, Richard D. Greene, Denver, for defendant in error.
Selected for Official Publication.
ENOCH, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
This case involves the competing claims by Tina Marie Homes, Inc. (Tina Marie) and The American National Bank of Denver (Bank) over a piece of construction equipment.
In November, 1966, Tina Marie delivered a trencher to Fincham Equipment Co. (Fincham), a dealer in both new and used heavy construction equipment. The trencher was put in Fincham's yard with other equipment that it had for sale and it remained there until replevied by the Bank on March 21, 1967. Tina Marie claimed the delivery to Fincham should have been characterized as a bailment whereas the Bank claimed the transfer was either a "sale or return" or a consignment. In any case, Tina Marie did not file a financing statement or otherwise indicate to the public that it claimed any interest in the trencher.
The Bank had been providing floor plan financing for Fincham for several years. On July 1, 1966, the effective date of the Uniform Commercial Code, the Bank filed a financing statement covering equipment on Fincham's lot. On December 5, 1966, Fincham gave the Bank a security interest in its current and after-acquired inventory of machines by executing and delivering to the Bank a security agreement. Fincham advised the Bank on December 12, 1966, that it had purchased the trencher as part of its inventory and requested that this machine be included under its floor plan security agreement. The Bank verified that Fincham had possession of the trencher.
John M. Fincham, the owner and operator of Fincham Equipment Co., died on March 16, 1967. At that time, his company was in default on its indebtedness to the Bank. Consequently, on March 21, 1967, the Bank initiated a replevin action to recover the trencher and other pieces of construction equipment which the Bank claimed as collateral for its loan to Fincham. Tina Marie filed a motion to intervene in this action. On May 29, 1967, the trial court entered judgment for the Bank against Fincham. Thereafter, the trial court permitted Tina Marie to intervene over objection of the Bank and subsequently held the interest of *575 the Bank in the trencher to be junior to that of Tina Marie. Judgment was entered against the Bank and the Bank was ordered to turn over the trencher to Tina Marie and to pay damages for wrongful detention in the amount of $6,300 plus costs.

I
The Bank claims that the trial court erred in not applying C.R.S.1963, § 155-2-326[1] (2-326) to this case. In its finding of fact, the trial court stated that the transaction involved was not a "sale or return" under the provisions of 2-326. It characterized the transaction as a "bailment leading to a possible future sale." The creation of a bailment does not contemplate transfer of title to the property. The president of Tina Marie testified that the purpose of the delivery of the trencher to Fincham was that Fincham was to attempt to sell it for Tina Marie. An eventual transfer of title was clearly contemplated by the parties. Thus, under Tina Marie's own evidence, this transaction with Fincham clearly was a consignment and not a bailment, and as such, is deemed to be a "sale or return" as set forth in 2-326(3).
Prior to adoption of the Code, according to the majority rule established by common law, the characterization of the transfer as a bailment or a consignment would not have been material, as legal title did not pass in either situation. The pre-Code concept of title dictated that the bailee or consignee had no right to hypothecate the property. Hence, a consignee's creditors would have had no claim against the consignor if the consignee's assets were inadequate to satisfy their respective claims. This rule placed a creditor of the consignee who relied on the consignee's possession in an unfavorable position. Section 2-326 of the Code was enacted to alleviate this problem. Its purpose is to allow the attachment of a third person's consignment property within a dealer's possession, by a creditor of the dealer, and to permit the creditor to treat such property as if it were owned by the dealer. Sussen Rubber Co. v. Hertz, 19 Ohio App.2d 1, 249 N.E.2d 65. To prevent the complete shift of risk to the consignor, the Code provides three ways in which the consignor can protect his interest from the consignee's creditors. C.R.S. 1963, 155-2-326(3), (a), (b), (c).
It is noted, however, that Colorado did not follow the pre-Code majority rule as to the relative rights of the consignor and the creditor of the consignee. In a similar pre-Code replevin case, the Colorado Supreme Court held that one who placed his automobile with a used car dealer for sale under consignment may not assert his ownership against a judgment creditor of *576 the dealer who levied upon the car to satisfy his judgment while it was in the dealer's possession. Zuckerman v. Guthner, 105 Colo. 176, 96 P.2d 4. This decision is in accord with the concept of apparent title of 2-326 which replaced the concept of title under the pre-Code majority rule.
The trial court held that the transaction between Fincham and Tina Marie was not a "sale or return". We agree that the facts of this case do not qualify this transaction as a "sale or return" under 2-326(1). "Sale or return" under subsection (1) is not defined in the Code. However, a "sale or return" transaction is not a new concept in Colorado law. A "sale or return" is a contract for the sale of goods whereby title passes immediately to the buyer subject to his option to rescind or return the goods if he does not resell them. See, Uniform Sales Act, C.R.S. 1963, 121-1-19, rule 3 and Ferry-Morse Seed Co. v. Board of County Commissioners, 126 Colo. 426, 250 P.2d 1003. Section 2-326(2) provides that goods held on sale or return are subject to the claims of the buyer's creditors while such goods are in the buyer's possession. The exceptions set forth in subsection (3), (a), (b), (c) apply only to transactions covered by subsection (3) and do not apply to a sale or return under subsection (1).
Consignment transactions (i. e., where title does not pass to the consignee) are covered by subsection (3), which deems such a transaction to be a sale or return; therefore, subject to the claims of the consignee's creditors, unless one of the three exceptions under 2-326(3) is established. Since the transaction in this case was a consignment, we hold that 2-326(3) is applicable and that it was error for the trial court not to have applied it. General Electric Co. v. Pettingell Supply Co., 347 Mass. 631, 199 N.E.2d 326; Guardian Discount Co. v. Settles, 114 Ga.App. 418, 151 S.E.2d 530; Sussen Rubber Co. v. Hertz, supra.

II
The trial court further found, assuming that the provisions of 2-326 did apply that "Fincham Equipment Co. was conducting or was substantially engaged in selling goods of others." On the basis of this finding, the trial court concluded that exception 2-326(3) (b) was applicable. This finding of fact does not support the trial court's conclusion because of the absence of a finding that Fincham was generally known by his creditors to be substantially engaged in selling the goods of others, nor is there sufficient evidence in the record to support such a finding. See Vonins, Inc. v. Raff, 101 N.J.Super. 172, 243 A.2d 836; Guardian Discount Co. v. Settles, supra; Sussen Rubber Co. v. Hertz, supra.

III
The Bank also claims that the trial court erred in ruling that 2-326 operates only for the protection of secured creditors. The trial court based this finding on Comment 2 of 2-326 which states:
"Pursuant to the general policies of this Act which require good faith not only between the parties to the sales contract, but as against interested third parties, subsection (3) resolves all reasonable doubts as to the nature of the transaction in favor of the general creditors of the buyer."
Subsection 2-326(3) does not distinguish between general and secured creditors. It refers only to "creditors". The term "creditor" is defined in XXX-X-XXX(12) and this definition is controlling:
"`Creditor' includes a general creditor, a secured creditor, a lien creditor, and any representative of creditors, including an assignee for the benefit of creditors, a trustee in bankruptcy, a receiver in equity, and an executor or administrator of an insolvent debtor's or assignor's estate." (Emphasis added)
*577 The Preface to the Uniform Commercial Code (as enacted by the Colorado Legislature) states:
"The official comments, the references contained in these comments and the cross references are nonstatutory and the inclusion of this nonstatutory matter is for the purpose of information only. No presumption or implication of legislative intent should be drawn therefrom."
The trial court was in error when it ruled that the provisions of 2-326 applied only to general creditors.

IV
The Bank claims that the trial court further erred by ruling that the Bank was estopped to assert its claim to the trencher because of its method of dealing and its failure to ascertain the true status of title. We agree with this assignment of error. The maxim that "Equity follows the law" applies here. Where a legal right is clearly established, the equitable doctrine of estoppel cannot be used to circumscribe that right. In re Scholtz-Mutual Drug Co., 298 F. 539. The effect of this principle is reinforced inasmuch as the Bank made no misrepresentation upon which Tina Marie relied to its detriment.

V
As a final assignment of error, the Bank claims that the court erred by assessing the Bank damages for wrongful detention of the trencher in absence of any evidence supporting such damages. The determination of this question is not material since the judgment is reversed and the issue of damages becomes moot.
We hold that the Bank properly protected its interest by filing according to C.R.S.1963, XXX-X-XXX(3) (c). Tina Marie did not comply with this provision nor otherwise do anything to manifest its interest in the equipment. Therefore, the rights of the Bank are superior to the rights of Tina Marie.
The judgment of the trial court is hereby reversed and the case is remanded to the trial court with directions to dismiss the complaint of the intervenor with prejudice.
COYTE and PIERCE, JJ., concur.
NOTES
[1] "Sale on approval and sale or return consignment sales and rights of creditors.

 (1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:
(a) A `sale on approval' if the goods are delivered primarily for use; and
(b) A `sale or return' if the goods are delivered primarily for resale.
(2) Except as provided in subsection (3) of this section, goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.
(3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then, with respect to claims of creditors of the person conducting the business, the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as `on consignment' or `on memorandum'; however, this subsection is not applicable if the person making delivery:
(a) Complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign; or
(b) Establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others; or
(c) Complies with the filing provisions of the article on secured transaction (article 9 of this chapter)."