504 P.2d 1113 (1972)
The AMERICAN NATIONAL BANK of Denver, a national banking association, Plaintiff-Appellee,
v.
QUAD CONSTRUCTION, INC., a Wyoming corporation, Defendant-Appellant.
No. 72-024.
Colorado Court of Appeals, Div. I.
October 25, 1972.
Rehearing Denied November 21, 1972.
Certiorari Denied January 15, 1973.
*1114 Dawson, Nagel, Sherman & Howard, John W. Low, David R. Johnson, Denver, for plaintiff-appellee.
Belmore T. Martin, Denver, for defendant-appellant.
Selected for Official Publication.
DWYER, Judge.
The American National Bank of Denver (Bank) brought this action to recover damages from Quad Construction, Inc., (Quad) for conversion of two pieces of construction equipment.
On October 28, 1966, Quad delivered a grader and a trencher to Fincham Equipment Co., Inc., (Fincham) a dealer in both new and used heavy construction equipment. Fincham placed the machines in its inventory with other equipment that it had for sale.
Previously, on July 1, 1966, the Bank had filed a financing statement covering the equipment on Fincham's lot. On December 5, 1966, Fincham gave the Bank a security interest in its current and afteracquired inventory of machines by executing and delivering to the Bank a security agreement. In the security agreement of December 5, 1966, Fincham listed the grader as part of his inventory, and, on December 9, 1966, Fincham reported to the Bank *1115 in a schedule of additional inventory its acquisition of the trencher. The security agreement was delivered to the Bank to secure Fincham's promissory notes to the Bank. The Bank verified that Fincham had possession of the grader and trencher.
Fincham defaulted on its notes to the Bank, and notice of this default was given to Fincham on February 23, 1967. On March 10, 1967, Quad, with Fincham's permission, removed the grader and trencher from Fincham's yard and took these machines into its possession. The Bank demanded that Quad return these items, and Quad refused. The Bank then brought this action and, after a trial to a court, recovered judgment for the stipulated value of the machines.
In four previous cases, this court has considered the validity of the security interests which The American National Bank claimed in machinery in Fincham's inventory. American National Bank v. Tina Marine Homes, Inc., 28 Colo.App. 477, 476 P.2d 573; American National Bank v. First National Bank, 28 Colo.App. 486, 476 P.2d 304; American National Bank v. Christensen, 28 Colo.App. 501, 476 P.2d 281; and American National Bank v. Etter, 28 Colo.App. 511, 476 P.2d 287. In each case, Fincham had given the Bank a security interest in items of machinery which it had in its inventory on "sale or return" from third parties. This court held that consignment transactions, in which the owner (consignor) delivers goods to a dealer (consignee) for sale by that dealer, are governed by the "sale or return" provisions of the Uniform Commercial Code, specifically C.R.S.1963, XXX-X-XXX(2) and (3), and that the goods held on sale or return are subject to the security interests of the consignee's creditors. The Bank's security interest was held to be superior to the interests of the consignor, and the Bank was entitled to obtain the property from Fincham in an action for replevin following Fincham's default.
Fincham had the machines on consignment from Quad, and they were in Fincham's possession at the time it gave the Bank a security interest in the machines. Under the rule announced in the American National Bank cases cited above, the Bank's security interest in the machines was superior to the interests of Quad. Quad contends, however, that under C.R.S.1963, XXX-X-XXX(2), its machines held on sale or return are subject to the security interest of the Bank only while they are in the possession of Fincham. The purpose of C.R.S.1963, XXX-X-XXX, is to allow a creditor of the dealer to attach a lien against property of a third person which is in the dealer's possession on consignment and to permit the creditor to treat such property as if it were owned by the dealer. American National Bank v. Tina Marie Homes, Inc., supra. The Bank's security interest in the machines, having attached while the chattels were in Fincham's possession, was not affected by the subsequent transfer of possession of the chattels from Fincham to Quad. Fincham's transfer of possession of the machines to Quad was in violation of the Bank's perfected security interest in the chattels, and the Bank was entitled to recover possession of the machines from Quad or to recover the value of the machines if a return could not be had.
This rule is consistent with the rights of a secured party as they existed prior to the enactment of the Uniform Commercial Code. Under the chattel mortgage statutes in effect prior to the adoption of the Code, it was held that the rights of a mortgagee of chattels were superior to the rights of one acquiring possession of the chattels from the mortgagor even where the transfer purported to be absolute and in exclusion of the rights of the mortgagee. In such cases, the mortgagee could recover the value of the chattels in an action against the transferee for conversion. See First National Bank v. American State Bank, 73 Colo. 254, 215 P. 473; and Ilfeld v. Ziegler, 40 Colo. 401, 91 P. 825.
The purpose of C.R.S.1963, XXX-X-XXX(2) and (3), is to protect the creditors of the consignee who would have a *1116 right to assume the goods were the property of the consignee. The real owner, however, can protect himself by showing that the creditor had no right to assume that the goods were owned by the consignee. Under the provisions of the Uniform Commercial Code, one of several means by which the consignor may protect himself is by showing that the dealer is generally known by his creditors to be substantially engaged in selling the goods of others.
A critical issue at the trial was whether Fincham was generally known by its creditors to be substantially engaged in selling goods of others. Based upon conflicting evidence, the trial court found against Quad on this issue.
We do not agree with Quad's contention that this finding by the court is manifestly against the weight of the evidence. The credibility of the witnesses, the sufficiency, probative effect, and weight of all the evidence, and the inferences and conclusions to be drawn therefrom, were all within the province of the trial court whose conclusions will not be disturbed on review unless so clearly erroneous as to find no support in the record. A court's finding based upon a choice between two plausible views of the weight of the evidence or upon a choice between conflicting inferences from the evidence is not clearly erroneous. Thiele v. State, Colo. App., 495 P.2d 558.
Quad also contends that the court's findings of fact and conclusions of law were insufficient to comply with the requirements of C.R.C.P. 52(a). The value of the property in question was stipulated to, and the facts surrounding Quad's delivery of the machines to Fincham, the execution and delivery of the documents establishing the Bank's security interest in the machines, and the return of the machines to Quad were not in dispute in any material respect. The trial court found generally for the Bank and, on the principal factual issue in dispute, specifically found that Fincham "was not generally known by its creditors to be substantially engaged in the selling of goods of others." The purpose of the requirements of C.R.C.P. 52(a) is to enable the appellate court to determine the basis of the trial court's decision. Murray v. Rock, 147 Colo. 561, 364 P.2d 393; Mowry v. Jackson, 140 Colo. 197, 343 P.2d 833; and Lininger v. Lininger, 138 Colo. 338, 333 P.2d 625. The findings of fact and conclusions of law here meet that test.
Quad contends that the trial court improperly restricted the testimony of witnesses Quad called in its attempt to prove that Fincham was generally known by its creditors to be substantially engaged in selling goods of others. There is no basis for this contention. The trial court allowed Quad's witnesses, both creditors and others, to testify that Fincham was engaged in selling goods of others. However, the trial court refused to permit these witnesses to testify to conversations with other persons concerning the knowledge of such other persons that Fincham was engaged in selling the goods of others. Such testimony was properly excluded as hearsay.
Quad also contends that the court improperly restricted the testimony of its witnesses concerning their knowledge that Fincham was engaged in selling goods of others. The court excluded testimony concerning the business practices of Fincham prior to 1965 as being too remote and without probative value. Quad made no offer of proof, and it cannot be determined from the record whether Quad was prejudiced by the court's ruling. C.R.C.P. 43(c) provides:
"In an action tried by a jury, if an objection to a question propounded to a witness is sustained by the court, the examining attorney may make a specific offer of what he expects to prove by the answer of the witness. The court may require the offer to be made out of the hearing of the jury. The court may add such other or further statement as clearly shows the character of the evidence, the form in which it was offered, the *1117 objection made, and the ruling thereon. In actions tried without a jury the same procedure may be followed, except that the court upon request shall take and report the evidence in full, unless it clearly appears that the evidence is not admissible on any ground or that the witness is privileged."
This rule was not followed. Where, relative to a claim of improperly excluded evidence, there is no offer of proof as required by C.R.C.P. 43(c), and where the reviewing court cannot determine without such offer whether or not the claimed error is prejudicial, the exclusion of the evidence will not be considered as a basis for reversal. Denver Decorators, Inc. v. Twin Teepee Lodge, Inc., 163 Colo. 343, 431 P.2d 8; and White v. White, 149 Colo. 166, 368 P.2d 417.
Judgment affirmed.
COYTE and ENOCH, JJ., concur.