**VAN DORN RETAIL MANAGEMENT, INC., a New York corporation, Plaintiff–Appellant,**

v.

**CITY & COUNTY OF DENVER, a municipal corporation; Patricia Schwartzberg, Manager of Revenue, City and County of Denver; Executive Director, Colorado Department of Revenue; and State of Colorado, Defendants–Appellees.**

No. 93CA1966.

Colorado Court of Appeals, Div. IV.

Nov. 17, 1994.

Rehearing Denied Dec. 22, 1994.

Certiorari Denied Aug. 28, 1995.

Baker & Hostetler, Michael G. Martin, Stephen D. Gurr, Denver, Baker & Hostetler, Leonard C. Greenebaum, Shelby F. Mitchell, Washington, DC, for plaintiff-appellant.

Daniel E. Muse, City Atty., Maria Kayser, Asst. City Atty., Denver, for defendants-appellees City & County of Denver and Patricia Schwartzberg.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Robert C. Ripple, Asst. Atty. Gen., Denver, for defendants-appellees Executive Director, Colorado Dept. of Revenue and State of Colo.

Opinion by Judge ROTHENBERG.

In this action for declaratory and injunctive relief, the plaintiff, Van Dorn Retail Management, Inc., appeals from the summary judgment entered in favor of defendants, the City and County of Denver and the State of Colorado, thereby rejecting Van Dorn's contention that certain tax lien provisions of Denver and the state are unconstitutional. We affirm.

The relevant facts are not in dispute. Van Dorn is a New York corporation that furnishes men's clothing on consignment to retailers nationwide. In November 1991, Van Dorn entered into a Consulting and Consignment Agreement with a Colorado corporation, Wisa, Inc., d/b/a Concord Custom Clothiers. Concord operated a men's retail clothing store in Denver, and pursuant to the agreement, Van Dorn provided Concord with certain goods on consignment for sale by Concord. Van Dorn also provided consulting services to Concord.

Concord was responsible for collecting and remitting Denver taxes, including sales tax and business and employee occupational privilege tax. Concord was also subject to personal property taxes assessed pursuant to state statute and collected by individual counties. In July 1992, Concord owed the City and County of Denver $7,360.96 in delinquent sales, occupational, and personal property taxes.

Pursuant to the Denver Revised Municipal Code § 53–63, the Denver Department of Revenue executed a Declaration of Jeopardy for unpaid taxes in July 1992. Denver also issued and executed a distraint warrant mandating that all property of, or used in, the business of Concord be seized in order to satisfy Concord's delinquent taxes. On August 5, 1992, the Colorado Department of Revenue similarly issued distraint warrants against Concord for unpaid state sales tax and state wage withholding tax and it served those warrants on the City and County of Denver.

Van Dorn requested an administrative hearing before the Director of Tax Compliance for the Denver Department of Revenue to determine whether that Department acted lawfully in seizing and holding goods consigned by Van Dorn. Following the hearing, the Director upheld the seizure of Van Dorn's consigned goods.

Van Dorn then filed this action, asserting that its goods had been unlawfully seized. Van Dorn argued, *inter alia,* that Denver Revised Municipal Code §§ 53–59 and 53–63 and §§ 39–26–117(1)(b) and 39–22–604(7)(a), C.R.S. (1994 Repl.Vol. 16B) are unconstitutional.

In response to cross-motions for summary judgment, the district court granted the motions of Denver and the state, concluding that the challenged ordinances and statutes are constitutional, both on their face and as applied to Van Dorn.

## I.

Denver and the state have similar statutory schemes for the collection of delinquent sales and withholding taxes. Denver Revised Municipal Code § 53–59(a) provides:

The tax imposed by this article, together with the interest and penalties herein provided and the costs of collection which may be incurred, shall be and, until paid, remain a first and prior lien superior to all other liens upon goods, merchandise, furniture, and fixtures, tools and equipment of any retailer or used by any retailer in conducting his retail business under lease, title retaining contract or other contract arrangement, within the city and shall take precedence on all such property over other liens or claims of whatsoever kind or nature and may be foreclosed by seizing under distraint warrant and selling so much of said merchandise, furniture and fixtures, tools and equipment as may be necessary to discharge said lien.

Denver Revised Municipal Code § 53–59(b) sets forth a procedure by which the owner of real or personal property who has made a bona fide lease to a retailer may exempt the leased property from the City's lien. Specifically, it provides in relevant part:

The real or personal property of an owner who has made a bona fide lease to a retailer shall be exempt from the lien created in this section (1) if such property can reasonably be identified from the lease description and (2) if the lessee is given no right

to become the owner of the property leased.

As to the state's similar statutory scheme, § 39–26–117(1)(a) C.R.S. (1994 Repl.Vol. 16B) provides that:

Except as provided in paragraph (b) of this subsection (1), the tax imposed by this part 1 shall be a first and prior lien upon the goods and business fixtures of or used by any retailer under lease, title retaining contract, or other contract arrangement, excepting stock of goods sold or for sale in the ordinary course of business, and shall take precedence on all such property over other liens or claims whatsoever kind or nature.

Section 39–26–117(1)(b), C.R.S. (1994 Repl. Vol. 16B) provides that:

The real or personal property of an owner who has made a bona fide lease to a retailer shall be exempt from the lien created in paragraph (a) of this subsection (1) if such property can reasonably be identified from the lease description or if the lessee is given an option to purchase in such lease and has not exercised such option to become the owner of the property leased.

Similarly, § 39–22–604(7)(a), C.R.S. (1994 Repl.Vol. 16B) imposes a priority tax lien on all property used in a business to ensure that all wage withholding taxes owed by the business will be paid over to the state. However, the state statute, unlike the Denver ordinance, also provides an exemption for the property of an owner, conditional vendor, or mortgagee when such person or entity provides alternate security for the taxes withheld:

The owner, conditional vendor, or mortgagee of any property, real or personal, or any stock in trade, business fixtures, or equipment owned or used by an employer subject to the lien provided by this subsection (7) may exempt such property from the lien granted in this section to the state of Colorado and the department by requiring the employer to procure a certificate from the department certifying that such employer has posted with the department security for the payment of the amounts withheld under the provisions of this section.

Section 39–22–604(7)(b), C.R.S. (1994 Repl. Vol. 16B).

Section 39–22–604(7)(c), C.R.S. (1994 Repl. Vol. 16B) further provides, in pertinent part, that:

> The real or personal property of an owner who has made a bona fide lease to an employer shall be exempt from the lien created in paragraph (a) of the subsection (7) if such property can reasonably be identified from the lease description or if the lessee is given an option to purchase in such lease and has not exercised such option to become the owner of the property leased.

## II.

Van Dorn contends that Denver Revised Municipal Code §§ 53–59 and 53–63 and §§ 39–22–604(7)(a) and 39–26–117(1)(a) authorizing the liens and seizure of Van Dorn's consigned goods, violate guarantees of equal protection established by the Fourteenth Amendment and Colo. Const. art. II, § 25, by treating similarly situated persons differently. More specifically, Van Dorn argues that the Denver ordinance and state statutes create an illogical and impermissible classification between owners of leased property who may exempt their property from Denver and state tax liens, and owners of consigned property like Van Dorn who have no such exemption.

Van Dorn also argues that Denver and the state have violated its right to substantive and procedural due process of law in failing to provide any means by which Van Dorn can exempt its consigned goods from the liens and in failing to provide clear enforcement standards under the relevant statutory provision. We reject these arguments.

### A.

### EQUAL PROTECTION

■ Although the Colorado Constitution contains no direct corollary to the Equal Protection Clause of the Fourteenth Amendment, Colorado citizens are guaranteed equal protection of the law by the due process clause of Colo. Const. art. II, § 25. *See*

*Central Colorado Water Conservancy District v. Simpson,* 877 P.2d 335 (Colo.1994); *Scholz v. Metropolitan Pathologists, P.C.,* 851 P.2d 901 (Colo.1993) (fn. 7); *Austin v. Litvak,* 682 P.2d 41 (Colo.1984).

■ Statutes enacted by the General Assembly are presumed constitutional. A party claiming that a particular statute is unconstitutional has the burden of establishing such assertion beyond a reasonable doubt. *Mayo v. National Farmers Union Property & Casualty Co.,* 833 P.2d 54 (Colo.1992).

■ Equal protection of the laws generally requires that the government accord similar treatment to all persons similarly situated. *Mayo v. National Farmers Union Property and Casualty Co., supra.* The Colorado courts have applied the same standards of strict scrutiny, intermediate scrutiny, and rational basis developed by the United States Supreme Court in analyzing equal protection issues arising under the federal constitution. *See Central Colorado Water Conservancy District v. Simpson, supra.*

■ Here, no party claims that the statutes and ordinance in question infringe on a fundamental right or create a classification based on race, religion, national origin, or gender. Thus, application of the rational basis test is proper.

■ The rational basis test has two prongs: (1) There must be a logical reason for the statutory classification; and (2) the classification must relate in a rational way to a legitimate governmental objective or interest. *Austin v. Litvak, supra.*

■ The power of the state to secure regular receipt of public revenue has long been recognized as an important and legitimate governmental interest. "By whom, when, and through what procedure or remedy taxes shall be collected is a matter for legislative determination, subject to the rule that the procedure cannot be utterly unreasonable or arbitrary or unequal and unjust in its operation." *Liebhardt v. Department of Revenue,* 123 Colo. 369, 374, 229 P.2d 655, 658 (1951).

■ Establishing tax liens and exemptions is a legislative determination. The General

Assembly may enact legislation imposing tax liens upon property and establish the relative priority of those tax liens. *ITT Diversified Credit Corp. v. Couch,* 669 P.2d 1355 (Colo. 1983). Similarly, Colo. Const. art. XX, § 6, grants a home rule city, such as Denver, the authority to levy an excise tax on a privilege within the city limits. *Deluxe Theatres, Inc. v. City of Englewood,* 198 Colo. 85, 596 P.2d 771 (1979).

■ Exemptions may be created, as long as they are not arbitrary or unreasonable. And, the classifications that necessarily arise as a result of these exemptions must also be proven unconstitutional beyond a reasonable doubt. *Austin v. Litvak, supra; Ping v. City of Cortez,* 139 Colo. 575, 342 P.2d 657 (1959).

■ Here, inasmuch as the property interests in a lease and a consignment are distinguishable, we agree with the trial court that Van Dorn has not demonstrated beyond a reasonable doubt the exemptions given to lessors by the Denver ordinance and the state statutes are arbitrary or unreasonable.

■ One important example of such distinguishing features is a lease normally provides that the lessor retains title to the property and reacquires possession of the property at the end of the lease term. In contrast, consigned goods normally are sold by the retailer and, with certain exceptions, also are subject to the claims of the buyer's creditors while such goods are in the buyer's possession. *See* § 4–2–326(2), C.R.S. (1992 Repl. Vol. 2); *American National Bank v. Quad Construction, Inc.,* 31 Colo.App. 373, 504 P.2d 1113 (1973); *American National Bank v. Tina Marie Homes, Inc.,* 28 Colo.App. 477, 476 P.2d 573 (1970).

This is not to say that leased and consigned property do not share important similarities. However, our review is limited to a determination of whether there is a rational basis for the statutory classifications. *See Duran v. Industrial Claim Appeals Office,* 883 P.2d 477 (Colo.1994) ("So long as the distinction drawn by the General Assembly is rationally related to some governmental interest, the Equal Protection Clause is not offended simply because the line which is drawn is imperfect.").

Applying that narrow test, we conclude, as did the trial court, that there is a rational basis to exempt leased property from a sales tax lien enforcing a retailer's delinquent taxes. Accordingly, we hold that the Denver ordinance and the state statutes do not violate Van Dorn's right to equal protection under either the state or federal constitutions.

### B.

### DUE PROCESS

■ Van Dorn next contends that the statutes and ordinances at issue violate substantive and procedural due process. Again, we disagree.

■ In analyzing due process challenges to tax statutes, a standard of reasonableness is appropriate. The means adopted by the General Assembly in enacting a statute cannot be unreasonable or arbitrary. *Liebhardt v. Department of Revenue, supra.* Again, the challenging party bears the burden of proving the statutory provisions unconstitutional beyond a reasonable doubt. *Burtkin Associates v. Tipton,* 845 P.2d 525 (Colo. 1993). The same considerations apply to a city ordinance concerning taxation. *See Ping v. City of Cortez, supra.*

*Burtkin Associates v. Tipton, supra,* is instructive. There, a lessor who had failed to comply with the exemption requirement of the same tax lien statutes contended that due process had been violated because the Department of Revenue was allowed to seize its property to satisfy the tax delinquency of another. Our supreme court rejected the argument. It held that an owner who allows property to be used for the purpose of deriving a privilege or benefit not only is charged with a knowledge of the law, but is "presumed to know the business there carried on," and have knowledge that it might be encumbered by a tax imposed upon it. *Burtkin Associates v. Tipton, supra,* at 528. *See Territory of Alaska v. Craig Enter, Inc.,* 355 P.2d 397 (Alaska 1960) (upholding tax lien

placed on property owned by one party to satisfy the delinquency of another).

Although we recognize that Van Dorn's consigned goods do not fall under the exemption provided to lessors, Van Dorn nevertheless voluntarily entered into the Consulting and Consignment Agreement with a Colorado business entity. Consequently, Van Dorn is charged with knowledge of the applicable tax laws and is subject to the tax liens established under those laws. *See Burtkin Associates v. Tipton, supra.* Accordingly, we conclude that the Denver and state provisions establishing a tax lien are not arbitrary or unreasonable and do not violate Van Dorn's substantive due process rights.

We also reject Van Dorn's claim that the seizing of the consigned goods by Denver and the state violated its procedural due process rights. To satisfy due process in such a situation, a post-deprivation hearing is all that is required. *See Patterson v. Cronin,* 650 P.2d 531 (Colo.1982).

Here, Van Dorn was notified before the seizure that the City would proceed with a jeopardy assessment under Denver Revised Municipal Code § 53–63. And, Van Dorn requested and received a hearing regarding the seizure. Thus, no procedural due process violation occurred.

Van Dorn's other contentions are without merit.

The judgment is affirmed.

MARQUEZ and CASEBOLT, JJ., concur.