EURPAC SERVICE INCORPORATED,
as successor to Mid Valley Products,
Inc., Plaintiff–Appellee,

v.

REPUBLIC ACCEPTANCE CORP.,
Defendant–Appellant.

No. 99CA1261.

Colorado Court of Appeals,
Div. II.

Aug. 31, 2000.

Rehearing Denied Nov. 9, 2000.

Jacobs Chase Frick Kleinkopf & Kelley LLC, N. Reid Neureiter, Denver, Colorado, for Plaintiff-Appellee.

Dorsey & Whitney LLP, Stephen D. Bell, Stephen E. Abrams, Denver, Colorado, for Defendant-Appellant.

Opinion by Judge NIETO.

Defendant, Republic Acceptance Corp. (Republic), appeals the judgment entered in favor of plaintiff, Eurpac Service Incorporated, as successor to Mid Valley Products, Inc. (Eurpac). We affirm in part and reverse in part.

Republic was a creditor of Front Range Distributors, Inc. (Front Range), a distributor of grocery products, and it had a security interest in the inventory owned by Front Range. Eurpac was engaged in selling products which were distributed by Front Range on a consignment basis.

Front Range defaulted on a loan from Republic, and Republic exercised its security interest in the inventory contained in Front Range's warehouse. In a replevin action, Republic seized the inventory, which included both goods owned by Front Range, and goods consigned to Front Range by Eurpac.

Eurpac initiated this action for conversion against Republic. The court granted Eurpac's summary judgment motion on the issue of liability only, and the action proceeded to a jury trial on the issues of damages and punitive damages. The jury awarded Eurpac $65,000 in compensatory damages and a like amount in punitive damages. In a separate order, the court trebled the punitive damages and awarded attorney fees to Eurpac. This appeal followed.

I.

Republic first asserts that the trial court erred in granting Eurpac's motion for summary judgment. Republic argues that, by operation of § 4-2-326, C.R.S.1999, it had a security interest in the consigned goods that was superior to the claim of Eurpac. We disagree.

In deciding cross-motions for summary judgment, the trial court found, and the parties do not disagree, that the following facts were not in dispute. The goods of Eurpac in Front Range's warehouse were there on consignment. Republic had a valid security interest in all of the inventory owned by Front Range. At the time Republic extended credit to Front Range, it understood that a portion of Front Range's inventory consisted of consigned goods, and it specifically refused to lend money against the consigned portion of the inventory. Republic required Front Range to maintain separate inventory records for consigned goods and goods owned by Front Range, and Republic had access to those inventory records. The consigned goods of Eurpac were seized by Republic when it foreclosed its security interest in Front Range's inventory.

Based on these undisputed facts, the trial court found that Republic had actual knowledge of Front Range's consignment business, and therefore, Eurpac had established an exception to § 4–2–326(2), C.R.S.1999. Because the exception was established, the trial court found that Republic had no claim to Eurpac's consigned goods and granted summary judgment in favor of Eurpac on its conversion claim.

Section 4–2–326(2) provides that goods consigned to a person who deals in the type of goods consigned, are subject to the claims of the creditors of the dealer unless the exceptions in § 4–2–326(3), C.R.S.1999, apply. The exception pertinent here provides that the goods will not be subject to the consignee's creditors if the consignor "[e]stablishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others." Section 4–2–326(3)(b), C.R.S. 1999.

■ Prior to the enactment of § 4–2–326, creditors of the consignee could not rely on consigned goods in possession of the consignee because the consignor's title was superior to their claim. Section 4–2–326 was enacted to address this problem. *American National Bank v. Tina Marie Homes Inc.*, 28 Colo. App. 477, 476 P.2d 573 (1970). The purpose of this statute "is to allow a creditor of the dealer to attach a lien against property of a third person which is in the dealer's possession on consignment and to permit the creditor to treat such property as if it were owned by the dealer." *American National Bank v. Quad Construction, Inc.*, 31 Colo.App. 373, 377, 504 P.2d 1113, 1115 (1972).

■ This shifting of risks to the consignor is not complete, however, as § 4–2–326(3) provides three exceptions. The purpose of the exceptions is to allow the consignor to "protect himself by showing that the creditor had no right to assume that the goods were owned by the consignee." *American National Bank v. Quad Construction Inc.*, *supra*, 31 Colo.App. at 377–78, 504 P.2d at 1116.

Republic argues that the exception was not established because Eurpac did not show that it was generally known by Front Range's creditors that Front Range was substantially engaged in selling consigned goods. They assert that the law does not recognize an "actual knowledge" exception.

■ Whether actual knowledge establishes the exception provided at § 4–2–326(3)(b) is an issue of first impression in Colorado. However, other courts and commentators have recognized an "actual knowledge" exception. *See Belmont International, Inc. v. American International Shoe Co.*, 313 Or. 112, 831 P.2d 15 (1992) (creditor's actual knowledge of the consignment before becoming a creditor is sufficient to meet the requirement of the exception); *First National Bank v. Olsen*, 403 N.W.2d 661 (Minn.Ct. App.1987) (under a Minnesota statute similar to § 4–2–326, C.R.S.1999, an exemption exists if the secured creditor had actual knowledge of the consignment); *GBS Meat Industry Pty. Ltd. v. Kress–Dobkin Co.*, 474 F.Supp. 1357 (W.D.Pa.1979) (failure to permit an exception when a creditor has actual knowledge would contravene the intent of U.C.C. § 2–326, which is similar to § 4–2–326); R. Anderson, *Uniform Commercial Code* § 2–326:103 (2000)(noting that a creditor is estopped from making a claim under U.C.C. § 2–326(3) when the creditor in fact knew that the consignee was holding the goods in that capacity).

Other courts and commentators have reached a contrary conclusion. *See In re State Street Auto Sales, Inc.*, 81 B.R. 215 (Bankr.D.Mass.1988)(creditor's knowledge of debtor's possession of consigned property irrelevant and consignor's interest is junior unless the provisions of Massachusetts' statutes similar to U.C.C. §§ 2–326 or 9–114 have been complied with; to find otherwise would defeat written notification requirements of § 9–114); *see also* J. White & R. Summers, *Uniform Commercial Code* § 30–4 (4th ed.2000).

Failure to acknowledge an "actual knowledge" exception would lead to an absurd result. *See Lagae v. Lackner*, 996 P.2d 1281 (Colo.2000)(although the court must give effect to a statute's plain and ordinary meaning, the General Assembly's intent and purpose must prevail over a literal interpretation that leads to an absurd result). The effect of

the literal language of the exception is to impute knowledge of the consignment arrangement to all creditors if the knowledge is "generally known." In other words, a creditor is held to knowledge which he or she could reasonably have obtained because it was "generally known" by other creditors. It would be absurd to hold a creditor responsible for imputed knowledge but not hold the same creditor responsible for actual knowledge.

We find the analysis employed by courts holding that actual knowledge establishes the exception of § 4–2—326(3)(b), more persuasive. This interpretation gives full effect to the purpose of the statute as explained in the official comments. *See* § 4–2–326, C.R.S. 1999 (Official Comments). It does not burden creditors with "secret liens" while providing limited protection to consignors who never intended to lose title to their property. It also avoids the result of giving greater weight to imputed knowledge than actual knowledge.

Accordingly, we conclude the trial court properly entered summary judgment on the issue of liability in favor of Eurpac and against Republic.

## II.

Republic next argues that three instances of reversible error occurred during the damages trial. We are not persuaded.

### A.

■ Republic first argues that the trial court prejudiced Republic's presentation to the jury by refusing testimony concerning Eurpac's lapsed financing statement. It points out one occasion when the court sustained an objection to testimony concerning the lapsed financing statement. However, the record shows that testimony of other witnesses concerning the financing statement was admitted. These witnesses informed the jury that Republic had searched the records for evidence of the financing statement before conducting the replevin action.

■ CRE 403 permits the exclusion of relevant evidence if its probative value is substantially outweighed by considerations of needless presentation of cumulative evidence. This determination is committed to the trial court's sound discretion, and its ruling will not be disturbed on appeal absent gross abuse. *National Canada Corp. v. Dikeou,* 868 P.2d 1131 (Colo.App.1993).

Here, since the evidence was before the jury through other witnesses, we find no prejudicial error when the court sustained the objection to the same testimony from another witness.

### B.

■ Republic next argues that certain comments by the court in the presence of the jury prejudiced Republic's case. Again, we are not persuaded.

Review of the portions of the transcript containing the allegedly prejudicial comments reveals that the statements were directly responsive to matters then occurring. The comments were not simply gratuitous negative comments about Republic. Rather, they all related to matters surrounding Republic's replevin of the goods. If Republic's liability on the conversion claim were at issue, the remarks might be cause for some concern. However, the only issue at trial was damages because the court determined on summary judgment that Republic was liable for conversion.

Under these circumstances, we conclude the court's comments concerning Republic's replevin of the goods did not prejudice Republic's presentation to the jury.

### C.

■ Finally, Republic argues that the trial court improperly admitted an exhibit that was not timely disclosed by Eurpac. However, Republic acknowledges that the exhibit was disclosed prior to trial, and it fails to show any prejudice for the alleged discovery violation. Matters concerning discovery are committed to the sound discretion of the trial court. *J.P. v. District Court,* 873 P.2d 745 (Colo.1994). We perceive no prejudice to Republic in the admission of this exhibit.

Therefore, we conclude that no prejudicial error occurred during the damages trial.

### III.

Republic next asserts there was insufficient evidence to support a verdict for exemplary damages and further that the trial court erred in trebling the jury's award of exemplary damages pursuant to § 13–21–102(3), C.R.S.1999. We agree in part.

### A.

■ The governing statute, § 13–21–102, C.R.S.1999, allows recovery of exemplary damages if damages are assessed for the claimed wrong and the injury is attended by circumstances of fraud, malice, or willful and wanton conduct. Willful and wanton conduct is defined to mean "conduct purposely committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or the rights and the safety of others, particularly the plaintiff." Section 13–21–102(1)(b), C.R.S. 1999.

■ The mere taking of another's property under an erroneous claim of right and over the protest of the owners is insufficient to permit an award of exemplary damages. *American National Bank v. Etter*, 28 Colo. App. 511, 476 P.2d 287 (1970). However, if the circumstances indicate that the taking was wrongful and was accomplished with reckless disregard of the injured party's rights or feelings, or was attended by circumstances of fraud, the issue of exemplary damages should be submitted to the jury. *Amber Properties, Ltd. v. Howard Electrical & Mechanical Co.*, 775 P.2d 43 (Colo.App.1988).

■ The sufficiency of the evidence to justify an award of exemplary damages is a question of law. When deciding this question of law, the court must view the evidence in the light most favorable to the party claiming exemplary damages. *Tri–Aspen Construction Co. v. Johnson*, 714 P.2d 484 (Colo. 1986).

Here, the record contains the following evidence. Republic had not relied upon the consignment portion of the inventory in extending credit to Front Range. Republic knew about Front Range's consignment business and even required Front Range to keep separate inventories of owned goods and consignment goods. Republic was aware that the goods it seized included property held by Front Range on consignment from Eurpac and others. Republic kept no records of what goods it sold in spite of its knowledge that Front Range and others claimed ownership of these goods. Republic had sent letters to consignors which contained misleading or false information, and it withheld information from its own attorneys when seeking advice on how to proceed. In deciding on its course of conduct, Republic considered the fact that many consignors' claims would be too small to justify a lawsuit.

■ Although Republic strongly contested this evidence and produced evidence challenging Eurpac's evidence, the credibility of witnesses' testimony and the weight to be accorded that testimony are issues to be determined by the jury as the trier of fact. *Gordon v. Benson*, 925 P.2d 775 (Colo.1996).

Viewing this evidence in the light most favorable to Eurpac, we conclude that it was sufficient to submit the question of exemplary damages to the jury. Thus, the jury's award of such damages was proper.

### B.

■ After accepting the jury's verdict awarding exemplary damages, the trial court trebled the damages pursuant to § 13–21–102(3), C.R.S.1999. That subsection allows the court to increase an exemplary damages award by not more than three times if defendant's behavior continued during the pendency of the action. The court's order does not specify what evidence it relied on to find continuing behavior.

The record reveals that shortly after the property was seized by Republic it was sold. The reason for the quick sale, at least in part, was because some of the goods were perishable. Thus, the property could not have been returned to Eurpac after the entry of summary judgment. Therefore, the only evidence of continuing behavior was the failure to pay the proceeds to Eurpac.

A court may award exemplary damages if "[t]he defendant has continued the behavior or repeated the action which is the subject of the claim against the defendant in a willful and wanton manner, either against the plain-

tiff or another person or persons, during the pendency of the case." Section 13–21–102(3)(a), C.R.S.1999. Here, the behavior which was the subject of the action was the seizure of Eurpac's goods with knowledge that Eurpac held title to the goods. Under the circumstances of this case, particularly considering that some of the goods were perishable, this behavior for purposes of the exemplary damages statute, ended when the seizure was complete and the goods sold. The retention of the proceeds under a claim of right was not a continuation of the objectionable behavior. *See Bennett v. Greeley Gas Co.,* 969 P.2d 754 (Colo.App.1998) (trial court may rely only on behavior during the pendency of the case when ordering treble damages).

Accordingly, we affirm the jury's award of exemplary damages, but the order trebling those damages cannot stand.

## IV.

Republic asserts it was error to assess attorney fees for its defense of this action. We agree.

The trial court found that: "The legal position of defendant was that defendant was entitled to seize and sell plaintiff's property because plaintiff had not perfected its position under the U.C.C. even though defendant had actual knowledge that the property belonged to plaintiff." The court found this defense to be groundless and frivolous.

A court may award attorney fees only if the action lacked substantial justification, which is defined as "substantially frivolous" or "substantially groundless." Section 13–17–102(4), C.R.S.1999. A defense is substantially frivolous only if the proponent can present no rational argument based on the evidence or law in its support. A defense is substantially groundless only if it is not supported by any credible evidence at trial. *Little v. Fellman,* 837 P.2d 197 (Colo.App.1991).

Republic made rational arguments on the law in support of its position that "actual knowledge" was not an exception to the provisions of § 4–2–326, C.R.S.1999. Indeed, the trial court noted in its summary judgment order that the facts of the case did not exactly fit "within the literal language of" § 4–2–326(3)(b). Further, as noted above,

the "actual knowledge" issue is a matter of first impression in Colorado, and Republic was able to cite authority from other jurisdictions in support of its position. Under these circumstances, the defense cannot be deemed frivolous.

The matter which the court found to be groundless was a question of law. That issue was decided against Republic on summary judgment based on undisputed facts. Republic did not fail for lack of evidence to support its position; it failed because its interpretation of § 4–2–326(3)(b) was erroneous. Thus, Republic's position cannot be deemed groundless, and the entry of judgment for attorney fees against Republic is not sustainable.

The judgment in favor of Eurpac and against Republic for damages and exemplary damages as awarded by the jury is affirmed. That portion of the judgment which trebled the exemplary damages and awarded attorney fees is reversed, and the cause is remanded to the trial court to vacate those portions of the judgment.

Judge PLANK and Judge DAILEY concur.