NAUMAN v FIRST NATIONAL BANK OF ALLEN PARK

1. SECURED TRANSACTIONS—SALES—STATUTES—CONSIGNMENTS—IN-
   TENTION OF THE PARTIES.
   The intention of the parties to the transaction controls whether a
   consignment will be governed by the Uniform Commercial
   Code, Article 2, governing sales, or Article 9, governing security
   interests (MCLA 440.2101 *et seq.;* 440.9101 *et seq.).*

2. SECURED TRANSACTIONS—SECURITY INTERESTS—ENFORCEMENT—
   THIRD PARTIES.
   A security interest may be enforced against a third party only if
   the secured party retains possession of the collateral or if the
   debtor signs a security agreement describing the collateral;
   thus, a party having a security interest in consigned goods may
   not enforce his interest against a third-party bank claiming a
   security interest where the secured party did not retain posses-
   sion of the goods and there was no evidence of the requisite
   writing (MCLA 440.9203[1]).

3. SALES—STATUTES—CONSIGNMENTS—TITLE—COMPETING INTEREST—
   SECURITY INTERESTS.
   A bank which financed the purchase of goods from a seller who
   obtained them pursuant to a consignment determined to be
   governed by the statutes pertaining to sales may not prevail
   against the party making the consignment unless the seller
   was "a merchant who deals in goods of that kind" and the
   purchasers were "buyers in the ordinary course of business"
   because, if either of the two facts did not exist, the purchasers
   would not have obtained good title and could not give a
   security interest to the bank (MCLA 440.2403[2]).

Appeal from Wayne, Theodore R. Bohn, J. Sub-
mitted Division 1 November 13, 1972, at Detroit.
(Docket No. 12464.) Decided September 27, 1973.

REFERENCES FOR POINTS IN HEADNOTES
[1] 68 Am Jur 2d, Secured Transactions § 186.
[2] 68 Am Jur 2d, Secured Transactions §§ 36–38, 138.
[3] 67 Am Jur 2d, Sales §§ 278–288.

Complaint by Phillip J. Nauman against the First National Bank of Allen Park and others for damages for conversion. Judgment for defendant First National Bank of Allen Park and complaint against the other defendants dismissed. Plaintiff appeals the judgment for the First National Bank of Allen Park. Remanded for further proceedings.

*Max E. Klayman* and *George Stone,* for plaintiff.

*Harry F. Vellmure* and *Victor T. Mitea,* for defendant First National Bank of Allen Park.

Before: LEVIN, P. J., and BRONSON and O'HARA,* JJ.

PER CURIAM. Phillip J. Nauman commenced this action against Security Bank & Trust Company,[1] Peter G. Grate and another person to recover the value of six trailers. Nauman purchased these and other trailers from the Claxton Trailer Company of Claxton, Georgia. Claxton shipped the trailers directly to Grate, who subsequently sold them to customers who financed their purchases with the bank.

Grate failed to pay Nauman as agreed. Grate's customers defaulted in their obligations to the bank. The bank foreclosed on the strength of security interests it obtained when it financed the purchases.

Nauman contends that because he retained legal title to the trailers, the sales by Grate to the customers transferred no title and, therefore, the

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Successor by merger to the originally named defendant, First National Bank of Allen Park.

bank by foreclosing wrongfully converted his property.

Early drafts of the Uniform Commercial Code provided that all consignments were security interests subject to Article 9 (Secured Transactions). This draft provision was deleted in favor of the present language.

Under the code if a consignment "is intended as security", then the effect of the retained title of the consignor is limited to a reservation of a "security interest". MCLA 440.1201(37), 440.9102(2); MSA 19.1201(37), 19.9102(2). A consignment not intended as security is subject to Article 2 (Sales), more specifically MCLA 440.2326(3); MSA 19.2326(3).

The critical language, "intended as security", focuses on the intention of the parties. The draftsmen of the code offer little elaboration of this phrase. The official comment accompanying code § 9-102 (MCLA 440.9102; MSA 19.9102) states:

"Transactions in the form of consignments or leases are subject to this Article [Article 9, Secured Transactions] if the understanding of the parties or the effect of the arrangement shows that a security interest was intended."

Various approaches have been suggested by text writers for determining when a consignment is intended as security. See 3 Bender's Uniform Commercial Code Service, Sales & Bulk Transfers Under U.C.C., § 11.03, p 11-10; Hawkland, *The Proposed Amendments to Article 9 of the UCC—Consignments and Equipment Leases,* Commercial Law Journal 108 (April, 1972); Hawkland, *Consignment Selling Under the Uniform Commercial Code,* Commercial Law Journal 146 (June, 1962);

White & Summers, Uniform Commercial Code, p 765.

We remand for the receipt of such additional evidence as the parties may wish to offer and fact-finding on the question whether "the arrangement shows that a security interest was intended". Official Comment, *supra;* see, also, *Mann v Clark Oil & Refining Corp,* 302 F Supp 1376 (ED Mo, 1969), aff'd 425 F2d 736 (CA 8, 1970); *In re De'Cor Wallcovering Studios, Inc,* 8 UCCRS 59 (ED Wis, 1970); *In the matter of Gross Manufacturing & Importing Co, Inc,* 328 F Supp 905 (D NJ, 1971).[2]

If Nauman's purported retention of title is found to be limited to the reservation of a security interest, he cannot on that basis prevail against the bank. A security interest may be enforced against a third party only if the secured party retains possession of the collateral or if the debtor signs a security agreement describing the collateral. MCLA 440.9203(1); MSA 19.9203(1). Nauman did not retain possession of the collateral. Nor is there any evidence of the requisite writing.[3]

---

[2] The record so far made shows the following:

Nauman knew that Claxton Trailer Company was trying to set up a dealership with Grate. He also knew that trailers had been shipped to Grate and that the sales were not completed because Grate refused to pay the accompanying sight drafts. At this point, the President of Claxton came to Detroit to resolve the situation. Nauman, a local stockholder of Claxton, met with him and agreed to purchase the trailers and park them on Grate's used car and truck lot. The arrangement was that, whenever Grate found a buyer, Nauman was to bring in the certificate of origin and endorse it over to the buyer. (Nauman was under the erroneous impression that Grate could not register title of a trailer without the certificate of origin.) The profits from each sale were to be split two-thirds to Grate and one-third to Nauman.

During the years 1964–1965 some 25 to 28 trailers were purchased by Nauman and placed on Grate's lot for sale. In some instances transactions were closed as outlined above. Nauman testified that he generally went down to Grate's lot about every 10 to 14 days to see how business was going.

[3] Moreover, the bank, by virtue of advances made to debtors

If it is determined that the consignment was not intended as security, the questions whether Grate was "a merchant who deals in goods of that kind" and whether the purchasers were "buyers in ordinary course of business" within the meaning of MCLA 440.2403(2); MSA 19.2403(2) would become important. If either of those questions was answered negatively, Grate's customers would not have obtained good title and, thus, could not have created in the bank a security interest. Nauman's interest would then prevail. The record is silent on whether Grate's purchasers were buyers in the ordinary course of business.

We anticipate no need to consider the provisions of MCLA 440.2326; MSA 19.2326. The controversy arose when the goods were no longer in Grate's possession. Also, Nauman failed to comply with the provisions of any of the three subdivisions, (a)–(c), of MCLA 440.2326(3); MSA 19.2326(3).

Remanded for further proceedings consistent with this opinion. Costs to abide the event. We do not retain jurisdiction.

---

(Grate's customers) to enable them to acquire rights in the collateral, acquired "purchase money security interest[s]". MCLA 440.9107(b); MSA 19.9107(b). These security interests are enforceable against a third party (Nauman) because the debtors (the six customers), in compliance with MCLA 440.9203(1); MSA 19.9203(1), signed security agreements which describe the collateral. The bank filed its security interests as required by MCLA 440.9302; MSA 19.9302 and, by so perfecting them within 10 days (MCLA 440.9303; MSA 19.9303), obtained priority over any conflicting security interests in the same collateral. MCLA 440.9312(4); MSA 19.9312(4).