**CENTRAL NATIONAL BANK OF MIAMI v. MOTIF ART GALLERIES, Inc., et al.**

No. 77-23465-CA-12.

Circuit Court, Dade County.

May 31, 1979.

Byron G. Petersen of Greenberg, Traurig, Askew, Hoffman, Lipoff, Quentel & Wolff, Miami, for the plaintiff.

Theodore M. Trushin and Richard J. Menin, both of Miami Beach, for the defendants Editions, Inc. and Diversified Editions, Inc.

GERALD T. WETHERINGTON, Circuit Judge.

*Opinion and final judgment:* This cause came on to be heard upon a complaint for declaratory judgment seeking this court's decree regarding plaintiff's right, title, and interest in and to certain art work repossessed by Central National Bank of Miami from Motif Art Galleries, Inc., d/b/a Galeria. Plaintiff is Central National Bank of Miami, a national banking institution (hereinafter the "bank"). Defendant Motif Art Galleries, Inc., d/b/a Galeria (hereinafter "Motif") is an art gallery (the "gallery") formerly located at Omni International, 1500 Biscayne Blvd., Miami, Florida.

Defendants, Robert A. Lubitz, Milton Stein, Louis Garwood, Carolyn Aranoff, and Cynthia Scroggin (hereinafter "buyers") claimed an interest in particular pieces of art as buyers in the ordinary course of business. Defendants, Editions, Inc.; Diversified Editions, Ltd.; Emmet Frank; James Mastin; and Laura Ferreria Levine (hereinafter "consignors") claimed to have superior title in certain portions of the repossessed art work pursuant to "consignment" agreements with the gallery.[1]

---

1. Defendant Robert Lubitz filed a counterclaim for declaratory judgment in his favor. Defendants, Diversified Editions, Ltd. and Editions, Inc., filed counterclaims for replevin. In addition to the named defendants, the bank sought to extinguish the possible claims of unknown buyers and consignors. Toward this end the bank duly published a notice of action pursuant to Chapter 49, Fla. Stat. (1977). The court having reviewed the affidavit in support of the notice of action, the notice of action, and the proof of publication, it is ordered and adjudged that a default judgment be and the same is hereby entered in favor of the plaintiff and against all unknown claimants.

As noted below, the interests of the defendants claiming to be buyers in the ordinary course of business were determined by a special master. The interests of Diversified Editions, Ltd., and Editions, Inc., were considered by this court after non-jury trial.[2]

### Findings of fact

Motif Art Galleries, Inc., d/b/a Galeria, is a Florida corporation that maintained the gallery located at the Omni. To finance its start-up and acquisition expenses, Motif obtained a loan from the plaintiff, Central National Bank of Miami.

On December 14, 1976, in conjunction with the loan to Motif, the bank filed with the Secretary of State, Financing Statement #729233, a certified copy of which evidences that the bank claimed a security interest in the inventory and after-acquired inventory of the gallery as well as in proceeds and account receivables. On May 17, 1977, Motif executed and delivered to the bank an installment collateral note in the principal sum of $21,166.65 and executed and delivered a security agreement in favor of the bank in the inventory of the gallery, presently owned and thereafter acquired. The security agreement also provided for future advances. Thereafter on June 17, 1977, Motif executed and delivered to the bank an additional note in the sum of $10,000. All proceeds under the aforementioned loans were paid to Motif.

Due to construction delays, the gallery did not open for business until June 8, 1977. On July 8, 1977 and July 19, 1977 the gallery entered into consignment agreements with Diversified Editions, Ltd. On July 15, 1977, the gallery entered into a consignment agreement with Editions, Inc. Pursuant to these agreements, defendants Diversified Editions, Ltd. and Editions, Inc. delivered works of art, in bulk, to the gallery for resale. The agreements provided that the goods were delivered to the gallery "on consignment" and that in the event of sale, Motif was to remit to the consignors the fixed wholesale cost of the item sold.

The gallery was open from June 8 until July 25, 1977, at which time Richard Fox, the president of Motif Art Galleries, Inc., sent a letter to the bank informing a loan officer that the gallery was

---

2. Individual consignors, Emmet Frank and James Mastin entered into settlement agreements with the bank prior to trial. Accordingly, their interests are not at issue herein. Defendant, Laura Ferreira Levine, did not appear at the trial of this cause and the court hereby enters a default and default judgment against her and in favor of the plaintiff.

going out of business and inviting the bank to take possession of the inventory. Immediately upon receipt of this letter, the bank peacefully entered the gallery and removed over 250 individual pieces of art. Shortly thereafter the bank began receiving inquiries from people who claimed to have purchased individual items of art work and from individual artists and corporate wholesalers who claimed to have delivered art work to the gallery on consignment. Prior to disposition of the collateral, the bank instituted the present proceeding to quiet title to the art work.

### Buyers in the ordinary course of business

Toward a resolution of the interests of those defendants claiming to be buyers in the ordinary course of business under 671.201(9) and 679.307, Fla. Stat. (1977), this court by order entered December 28, 1977, appointed Dean Frederick B. Lewis, Jr., as special master. On April 28, 1978 the special master conducted a hearing for the purpose of taking testimony regarding the claims of the defendants, Milton Stein, Robert A. Lubitz, Louis Garwood, Cynthia Scroggin, and Carolyn Aranoff. Having heard the testimony of the parties, the master issued his findings of fact and conclusions of law. Dean Lewis found that defendants, Carolyn Aranoff, Robert Lubitz, and Milton Stein, had purchased specific works of art from the gallery prior to Motif going out of business and had paid to Motif a portion of the purchase price pending framing and delivery.[3] Pursuant to this finding and the dictates of 671.201(9) and 679.307, Fla. Stat. (1977), the master found that the claimed art should be delivered to the buyers upon the payment of the balance due. Thereafter, the defendants received their paintings and paid into escrow the balance due.

The court has carefully considered the findings of fact and conclusions of law of the special master. There being no objection to said findings, it is hereby ordered and adjudged that the findings of fact and conclusions of law of the special master are hereby ratified, confirmed, and adopted by this court and judgment is hereby entered in accordance therewith. The court further finds that the $1,752.60 currently in the trust account of the attorneys for plaintiff, may be delivered to the plaintiff in partial satisfaction of the plaintiff's claim against Motif, by virtue of the plaintiff's perfected security interest in account receivables and proceeds.

---

3. It was established at the hearing that the work claimed by defendant, Louis Garwood, was not in the bank's possession. Defendant, Cynthia Scroggin, failed to appear at the hearing and a default was entered against her.

## The consignment position

Throughout these proceedings, Central National Bank of Miami has contended that its interest in the repossessed art work is superior to the interest of any of the parties claiming a consignment position. The bank's contention in this regard is predicated on Florida Statute 672.326 (1977) [§2-326 Uniform Commercial Code] which provides —

672.326   Sale on approval and sale or return; consignment sales and rights of creditors. —

*(1)   Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:*

(a)   A "sale on approval" if the goods are delivered primarily for use, and

*(b)   A "sale or return" if the goods are delivered primarily for resale.*

*(2)   Except as provided in subsection (3)*, goods held on approval are not subject to the claims of the buyer's creditors until acceptance; *goods held on sale or return are subject to such claims while in the buyer's possession.*

*(3)   Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum." However, this subsection is not applicable if the person making delivery:*

*(a)   Complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or*

*(b)   Establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or*

*(c)   Complies with the filing provisions of the chapter on secured transactions (chapter 679).*

(4)   Any "or return" term of a contract for sale is to be treated as a separate contract for sale within the statute of frauds section of this chapter (s. 672.201) and as contradicting the sale aspect of the contract within the provisions of this chapter on parol or extrinsic evidence (s. 672.202.⁴

---

**4.** Alternatively, plaintiff has contended that the instant "consignments" are governed by the filing provisions of Article 9, on the grounds that the transactions were "consignments intended as security." Sec. 679.102(2), Fla. Stat. [U.C.C. 9-102(2)] provides that a "consignment intended as

Though no Florida courts have applied this statute in a reported decision, this court has found ample direction in the decisional law of other states, as well as in the official comments to the Uniform Commercial Code. As noted by the Colorado Court of Appeals in *American National Bank v. Quad Construction, Inc.*, 504 P.2d 1113 (Colo. App. 1972) —

> The purpose of [U.C.C. 2-326], is to allow a creditor of the dealer to attach a lien against property of a third person which is in the dealer's possession on consignment and to permit the creditor to treat such property as if it were owned by the dealer. *Id.* at 1115. See also *American National Bank v. Tina Marine Homes, Inc.*, 476 P. 2d 573 (Colo. App. (1970)

Similarly stated, the statute —

> "[p]ermit[s] people to deal with a debtor upon the assumption that all property in his possession is unencumbered, unless the contrary is indicated by their own knowledge or by public records." *Bufkor, Inc. v. Star*

---

security" is subject to the Article governing secured transactions. Thus, with respect to any particular consignment, the question arises whether it is a true consignment governed by U.C.C. 2-326 or a security device governed by U.C.C. 9-102(2). The intention of the consignor and consignee governs which provision will apply. See, e.g., *In Re Webb*, 13 U.C.C. Rep. 394 (S.D. Tex. 1973); *In Re Fabers, Inc.*, 12 U.C.C. Rep. 126 (D.C. Conn. 1972); *Columbia International Corp. v. Kempler*, 175 N.W. 2d 465 (Wisc. 1970); *Nasco Equipment Co. v. Mason*, 229 S.E. 2d 278 (N.C. 1976) *Nauman v. First National Bank of Allen Park*, 212 N.W. 2d 760 (Mich. App. 1973); Hawkland, *Consignments Under the Uniform Commercial Code: Sales or Security?*, Uniform Commercial Code Co-Ordinator Annotated (1963).

The Supreme Court of Wisconsin in *Columbia International v. Kempler*, supra applied a functional test of intention. According to the court, a security consignment governed by Article 9 arises "[w]here the goods go to the merchant who is unwilling to risk finding a market for the goods so the title remains in the consignor." *Id.* at 658. A true consignment governed by Sec. 2-326 arises where the consignment transaction is utilized to insure resale price maintenance. *Id.* In other words, Sec. 2-326 is operable where the consignor fixes, by agreement, the ultimate price for which the goods can be sold by the consignee.

Though there is evidence in the record to indicate that Motif's agreements with Editions, Inc. and Diversified Editions, Ltd., were "consignments intended as security" under the functional test utilized in *Columbia International*, the court need not consider this issue in light of the court's ruling that the transactions do not fall within any of the exceptions of Sec. 2-326 U.C.C.

*Jewelry Co., Inc.,* 552 S.W. 2d 522, 22 U.C.C. Rep. 388-339 (Tex. App. 1977). Accord *Columbia International Corporation v. Kempler,* 175 N.W. 2d 465 (Wisc. 1970)

Diversified Editions, Ltd. and Editions, Inc. have attempted to except their transactions with Motif from the operation of §672.326, Fla. Stat., by defining their relationship with the gallery as a bailment or entrustment. It is clear such semantic gyrations have no effect on the operation of the statute. Under the statute, regardless of the label placed on the transaction, if a person delivers goods to another person and the latter "[m]aintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery," then the transaction is conclusively presumed to be a "sale or return" with respect to the claims of creditors of the business. This is true even though the agreement "[p]urports to reserve title in the person making delivery," or uses such terms as "[o]n consignment." The statute "[r]esolves all reasonable doubts as to the nature of the transaction in favor of the [debtor's] creditors." *In re A & T Kwik-N-Handi, Inc.,* 13 U.C.C. Rep. 779, 781 (M.D. Ga. 1973). See also *Manufacturers Acceptance Corp. v. Penning's Sales, Inc.,* 487 P.2d 1053 (Wash. App. 1971).

It is interesting to note that under the first drafts of the Uniform Commercial Code a person making delivery of goods to a business dealing in like goods could only protect his interest over that of a creditor of the business to which he delivered the goods if he complied with the public filing provisions of Article 9 of the Code. See e.g., *Nauman v. First National Bank of Allen Park,* 212 N.W. 2d 760, 13 U.C.C. Rep. 1191, 1193 (Mich. App. 1973).

Under Sec. 2-326 as finally enacted, a person delivering goods to another who deals in goods of the kind involved may protect himself in one of three ways. He may file a statement of his interest with the Secretary of State; comply with an applicable sign law; or show that the person to whom he delivered goods was generally known by his creditors to be substantially engaged in the business of selling the goods of others.

In Florida, there is no statute providing that a consignor's interest may be evidenced by a sign. See 38 Fla. Stat. Ann. 293. Furthermore, the defendants admit that they did not comply with the filing provisions of Article 9 [Chapter 679, Fla. Stat. (1977)]. Accordingly, the only issue before this court is whether Motif Art Galleries, Inc., d/b/a Galeria, was "generally known by [its] creditors to be substantially engaged in selling the goods of others. The statute does not differentiate between general and secured creditors. See, e.g., *In Re International Mobile Homes of Johnson City, Inc.,* 14 U.C.C. Rep. 1150 (E.D. Tenn. 1974) ; *American National Bank of Denver v. Tina Marie Homes, Inc.,* supra.

The burden of proving general knowledge by the creditors rests on the party seeking the benefit of the exception. See, e.g., *In Re International Homes of Johnson City, Inc.* (E.D. Tenn. 1974); *In Re Webb*, 13 U.C.C. Rep. 394 (S.D. Tex. 1973).

The court specifically finds that the defendants, Diversified Editions, Ltd., and Editions, Inc., have failed to meet their burden of proof in this regard. At trial, the plaintiff produced five creditors of the gallery, including the accountant for Motif. The parties stipulated that these witnesses were creditors of the gallery at the time the gallery went out of business, and that they had no knowledge that the gallery was engaged, in any respect, in the business of selling the goods of others.

Defendants offered the testimony of only two witnesses. The president of Editions, Inc. (which corporation was a creditor of the gallery as well as a consignor) testified that he was aware that the gallery was substantially engaged in selling the goods of others. As stated by the court in *Guardian Discount Co. v. Settles*, 151 S.E. 2d 530, 3 U.C.C. Rep. 838 (Ga. App. 1966), "[w]hat the supplier of goods knows about the merchandise delivered to such dealer by him is not sufficient to show that the dealer's creditors generally know he is substantially engaged in selling the goods of others." 3 U.C.C. Rep. at 843. Accord *Sussen Rubber Co. v. Hertz*, 249 N.E. 2d 65 (Ohio App. 1969).

Defendants' other witness, an art dealer, was not a creditor of the gallery. His testimony was offered by the defendants to provide evidence of the custom in the art industry. He testified that it was customary for art galleries to receive some of their goods on consignment. To paraphrase *In Re Fabers, Inc.*, 12 U.C.C. Rep. 126 (D. Conn. 1972), defendants provided no evidence "[t]hat this was the universal and invariable practice in the trade or that creditors of [the gallery] who apparently did not deal in [art work] knew anything about the custom [in the trade]." *Id.* at 130.

Accordingly, the court finds on the basis of the above, that Motif Art Galleries, Inc. was not generally known by its creditors to be substantially engaged in the business of selling the goods of others.[5]

---

5. In light of the inadequate showing by the defendants on this issue, it was not necessary for the court to determine, with mathematical precision, the meaning of "generally known" and "substantially engaged" as those terms are used in §672.326(3)(b), Fla. Stat.

   "What are requisite to constitute a general knowledge by creditors and a substantial engagement by the dealer are issues likely to be shrouded in doubt for some time to come." XIV *Rutgers L. Rev.* 518, 562. The official comments to the Code indicate that "substantially engaged" is the

Defendants have also claimed that the plaintiff's security interest in inventory did not attach to the consigned goods, since these goods were brought onto the premises of the gallery subsequent to the execution of the security agreement. Specifically, defendants claim that an after-acquired property clause in a security agreement will not operate to attach a security interest in consigned goods because the debtor does not "own" the goods. Similar contentions have been raised and rejected in several decisions. As stated by the Ohio Court of Appeals in *Sussen Rubber Co. v. Hertz,* 249 N.E. 2d 65 (Ohio App. 1969) —

> The point which plaintiff attempts to make is that a creditor . . . cannot attach any consignment property which subsequently comes into a debtor's possession from a third party, because such property was not contemplated as coming within the provisions of [U.C.C. Section 9-204], pertaining to the attachment of a security interest in after-acquired property. Thus, according to plaintiff's theory, only property which is "owned" by a debtor and acquired after a security agreement has been entered into, can later be subject to a creditor's claim, so as to comply with that feature of [U.C.C. Section 9-204] which requires that "the debtor has rights in the collateral." Such an interpretation of the above statute must be rejected.
>
> The specific provisions of [U.C.C. Section 2-326], which may be looked to in determining the status of the consignment property in the instant case, dictate the conclusion that so far as creditors are concerned such property may be treated as if owned by the debtor.
>
> . . . [this] requires the conclusion that the after-acquired property feature of the security agreement herein need not be limited so as to include only property in which the dealer acquired "ownership" rights.

---

equivalent of "primarily engaged" 38 Fla. Stat. Ann. 293. But, see *Guardian Discount v. Settles,* supra. "Generally known" was construed by the court in *International Mobile Homes,* supra, to mean "for the most part; widely . . ." *Id.* at 1158. The majority of those courts which have confronted the issue appear to have taken the position that the test of general knowledge is whether a majority of the debtor's creditors had actual knowledge the debtor was substantially engaged in selling the goods of others. See, e.g., *International Mobile Homes,* supra; *Vonnis, Inc. v. Raff,* 243 A. 2d 836; *In Re Webb,* supra. See also *Sussen Rubber Co.,* supra. This would appear to be true even though the amount owed to the minority of creditors who had the requisite knowledge constitutes more than half of the total indebtedness of the debtor. *In Re Webb,* supra.

In any respect, the terms must be construed to give effect to the "general notice" policy inherent in the statute. See *Nasco Equipment Co. v. Mason,* 229 S.E. 2d 278, (N.C. 1976).

The same result was reached by the courts in *Weidinger Chevrolets, Inc. v. Universal C.IT.*, 15 U.C.C. Rep. 197 (8th Cir. 1974); *General Electric Credit Corporation v. Tidwell Industries, Inc.*, 565 P.2d 868 (Ariz. 1977); *Manufacturers Acceptance Corp. v. Penning's Sales, Inc.*, supra., and *Nasco Equipment Co. v. Mason*, supra.

Based on the court's conclusion that the after-acquired property clause of the bank's security agreement operated to give the bank a perfected security interest in the consigned goods and the court's finding that the gallery was not generally known by its creditors to be substantially engaged in the business of selling the goods of others, judgment is hereby entered in favor of the plaintiff, Central National Bank of Miami, and against the defendants, Diversified Editions, Ltd. and Editions, Inc., on the complaint for declaratory judgment. Similarly, judgment is entered in favor of Central National Bank of Miami, and against Diversified Editions, Ltd., and Editions, Inc., on their counterclaims for replevin.

Throughout these proceedings, the court has not been unmindful of the potentially harsh consequences of Sec. 672.326, Fla. Stat. [U.C.C. 2-326]. It is clear to the court that artists often are not able to find markets for their works unless they place them on consignment with local galleries. Because an item of art may frequently be moved from one location to another, even if the artist knows that the only safe protection against the interests of the consignee's creditors is to file an Article 9 statement with the Secretary of State,[6] the frequent transfer of the art work to different locations, may make filings uneconomical and burdensome. On the other hand, courts as well as commentators have unanimously condemned the commercial disruption that might result from undisclosed ostensible ownership.

---

6. Reliance on the "general knowledge" exception of §672.2-326(3)(b) would be misplaced. "[I]t must be apparent that the risk involved in undertaking to establish the creditors' general knowledge is serious." *In Re Novak*, 7 U.C.C. Rep. 196, 203 (Maryland Circuit Ct. 1969). As noted by Professors White and Summers —

> "[i]t is difficult to explain why consignors have litigated so many cases. In all but one or two the consignor could hardly have expected to prevail since he did not comply with Article Nine . . . Presumably some lawyers for consignors persist in the erroneous belief that the Code did not alter the rights of consignors." White and Summers, *Uniform Commercial Code*, §22-4 (1972).

114

Perhaps the competing policies could best be balanced by the enactment of a statute providing that a consignor's interest can be evidenced by a sign placed on the premises of the consignee. The court's function is to apply the law as it finds it, as this court has done in the instant case. Yet, faced with the burdens that can result the court strongly suggests that the Florida legislature give consideration to the enactment of such a law.

The court reserves jurisdiction of this cause for the purpose of taxing costs and enforcing the settlement agreements.