In the Matter of SHINVILLE ASSOCIATES, INC. Shinville Leasing, Inc., Debtors.

SHINVILLE ASSOCIATES, INC. Shinville Leasing, Inc., Plaintiffs,

v.

MILLER EQUIPMENT CO., Defendant.

Bankruptcy Nos. HK 84 00233, HK 84 00234. Adv. No. 84 0187.

United States Bankruptcy Court, W.D. Michigan.

Feb. 11, 1985.

James Vantine, Kalamazoo, Mich., for debtors/plaintiffs.

F. William McKee, Grand Rapids, Mich., for defendant.

OPINION

MOTION FOR PARTIAL SUMMARY JUDGEMENT—M.S.A. § 19.9203(1)(a) [M.C.L.A. § 440.9203(1)(a)]

INSUFFICIENCY OF FINANCING STATEMENT AS SECURITY AGREEMENT

LAURENCE E. HOWARD, Bankruptcy Judge.

In their complaint to determine the validity of liens, plaintiffs, Shinville Associates,

Inc., and Shinville Leasing, Inc., Chapter 11 debtors in possession, contest the secured status that the defendant, Miller Equipment Co., has claimed. Each side has brought a motion for partial summary judgment, both of which raise the question of whether the financing statements executed and filed by the parties constitute security agreements enforceable against the debtors. The defendant asks the court to declare that the financing statement as a matter of law has the effect of a security agreement; the plaintiff in response asks the court to declare that these financing statements do not constitute security agreements. To resolve these motions the court must decide whether parol evidence may be admitted to augment the financing statements, and if not, whether the financing statements alone constitute security agreements.

## FACTS

Shinville Associates ("Associates") is engaged in the business of excavation, underground work, and equipment rental. Shinville Leasing ("Leasing") is a wholly owned subsidiary of Associates. Associates has rented equipment from Miller Equipment, Inc., ("Miller") since 1965. (Deposition of Temple, pages 4–5) Leasing began doing business with Miller in early 1982. (Deposition of Van Sweden, page 2) Prior to October 12, 1983, Miller took no collateral as security for the debt of either Associates or Leasing, nor were any security agreements or financing statements executed. (Defendant's Brief, page 2)

On October 12, 1983, Don Miller of Miller Equipment brought a financing statement to Donald Temple for his signature as president of Associates. (Deposition of Temple, at page 6) At his deposition, Temple stated that he signed the financing statement in the belief that in doing so he was giving Miller a security interest in Associates' property. He neither signed any other document, nor believed any other document necessary to attain that end. (Deposition of Temple, pages 7–10) That same day, Don Miller brought an identical financing statement to Clarence Van Sweden to sign as president of Leasing. Van Sweden stated at his deposition that he signed the financing statement because Miller had requested a security interest for the Leasing debt. Sweden also stated that at the time he believed signing the financing statement would accomplish that purpose. (Deposition of Van Sweden, pages 8–10)

Miller's counsel concedes that no other documents but the standard form financing statements were signed. (Transcript of Summary Judgment Motion, page 6) These financing statements, identical but for the signatures, cover "all of debtor's fixtures, machinery and equipment now owned or hereafter acquired." The statements identify Associates and Leasing as the debtors, and Miller as the secured party. The financing statements do not mention a security interest, nor its creation or provision therefore, and neither contains any language that would indicate whether a security agreement had been concluded or was at the time of filing then yet pending. (Defendant's Exhibit C)

As the facts are identical for both Associates and Leasing the opinion shall refer to them collectively.

## DISCUSSION

Both counsel for the debtors (Transcript of Summary Judgment Motion, page 4) and for Miller (Transcript of Summary Judgment, page 6) agree that there are no genuine issues of material fact presented to the court. Reviewing the evidence the court concludes that they are correct and that partial summary judgment pursuant to Bankr.R.P. 7056 and F.R.C.P. 56 is therefore appropriate as to the issue of whether the financing statements constitute enforceable security agreements.

Miller contends by its brief and at oral argument that these financing statements coupled with the indicia of intent revealed by the deposition statements are sufficient to satisfy the signed writing requirements of the Uniform Commercial Code and further that the financing statements alone are sufficient to create a valid security

interest. The debtors, of course, deny these contentions. To decide either motion for summary judgment the court must first determine whether deposition statements may be permitted to buttress the financing statements, and if not, whether these financing statements standing alone constitute security agreements.

### PAROL EVIDENCE

■ Michigan law provides that a security interest is unenforceable against a debtor unless the debtor has signed a security agreement which contains a description of the collateral. M.C.L.A. § 440.-9203(1). M.S.A. § 19.9203(1): This requires a written agreement. Paragraph five of the "Purposes of Changes" section accompanying M.S.A. § 19.9203 reinforces this conclusion by specifying that a writing is required. This paragraph further states that the section concerned has done away with the doctrine of equitable mortgage which permitted the enforcement of informal security agreements. Paragraph five concludes by stating:

> More harm than good would result from allowing creditors to establish a secured status by parol evidence after they have neglected the simple formality of obtaining a signed writing.

Although these comments were not enacted as law along with the text, they clearly illustrate the purpose and effect intended by the legislature in enacting this section. Parol evidence may not be permitted to establish the security agreement. *In re France*, 32 U.C.C.Rep. 1605 (D.Me.1982); *American Card Company v. H.M.H. Co.*, 97 R.I. 59, 196 A.2d 150 (1963). Therefore, insofar as the deposition statements of Temple and Van Sweden may be claimed to create the security interest they must not be considered by this court.

However, the defendant has drawn his argument more narrowly. Miller argues that the deposition statements are evidence of an intent to create a security interest which if considered concurrently with the signing the financing statements, as it was, would create security agreements of those

financing statements. The defendant urges the court to look at the transaction as a whole, not at the documents alone, and to look at the deposition statements as reliable indicia of intent. (Defendant's Brief, page 8) To support the contention that the court may look to reliable indicia of intent other than the signed writing, the defendant cites to *Matter of Bollinger Corp.*, 614 F.2d 924 (3rd Cir.1980); *In re Amex-Protein Development Corp.*, 504 F.2d 1056 (9th Cir.1974); *In re Summit Creek Plywood Company, Inc.*, 27 B.R. 209 (Bankr. Ore., 1982); *In re Numeric Corp.*, 485 F.2d 1328 (1st Cir.1973); and *Nauman v. First National Bank of Allen Park*, 50 Mich. App. 41, 212 N.W.2d 760 (1973).

In *Bollinger* the Third Circuit held that a promissory note read in conjunction with a duly filed financing statement and supported by a group of letters would be sufficient to establish a security agreement. The Ninth Circuit has held in *Amex-Protein* that a promissory note that read in part "This note secured by a security interest in subject personal property as per invoices" provided for a security interest and that a properly filed financing statement gave notice of the interest. The *Summit Creek* bankruptcy court held that the debtor's signing of amendments to financing statements after conclusion of a separate security agreement and the filing of financing statements for it created a security in inventory mentioned in the amendments but not in the original security agreements. *In Numeric* the First Circuit held that a resolution of the debtor's board of directors which authorized the corporation clerk to prepare a standard financing statement to secure the creditor's debt and as evidence of that security, taken along with the filed financing statement, constituted a security agreement enforceable against the debtor. Turning to Michigan law, the Michigan Court of Appeals has held in *Nauman* that the intention of the parties will determine whether a security interest or a consignment was intended, but if a security interest was intended it will fail absent "the

requisite writing," a signed security agreement.

A survey of caselaw discloses many decisions similar to those cited. Among these is *Nunnemaker Transportation Co. v. United California Bank*, 456 F.2d 28 (9th Cir.1972), in which the Ninth Circuit held that a letter confirming an oral security agreement that was signed by all the parties and contained a description of the collateral constituted a written security agreement. Multiple documents, however, are no guarantee of success. The Tenth Circuit held in *Pontchartrain State Bank v. Poulson*, 684 F.2d 704 (10th Cir.1982) that a promissory note and letter taken together may not be construed as a security agreement when the note fails to contain language creating a security interest nor to adequately describe the collateral and the letter creating the interest was signed by the debtor's attorney.

The defendant argues by analogy based on the assumption that there is no difference between gleaning intent from other written documents and gathering it from oral admissions. (Defendant's Brief, page 8) However, there is a great difference, a difference imposed by statute. The Uniform Commercial Code has imposed this difference by requiring that a security agreement be proven only from written statements. M.S.A. § 19.9203(1), M.C.L.A. § 440.9203(1). Nor has this requirement been undermined by caselaw. Not one of the cases cited above admitted oral statements. All but *Nauman* involved written documents, and the *Nauman* court held that the absence of a writing would be fatal to the creation of a security interest. The decisions of this district have respected that difference for they have never sustained a financing statement as a security agreement unless it was upheld by other writings such as letters, as in *In re Munro Builders, Inc.*, 20 U.C.C.Rep. 739 (W.D. Mich.1976) decided by Judge Nims. See Also *In re Taylored Products, Inc.*, 5 U.C.C.Rep. 286 (W.D.Mich.1968).

It is not sufficient that the parties merely hold the intent to create a security interest; that intent must be expressed in writing. The Bankruptcy Court for the Eastern District of Michigan considered a similar situation in *In re Taylor Mobile Homes, Inc.*, 17 U.C.C.Rep. 565, 1 B.C.D. 879 (Bankr.E.D.Mich.1975). Taylor Mobile Homes, Inc. was the wholly owned subsidiary of "Management" which was wholly owned by one person who served as president of both firms. Management executed a security agreement covering inventory in behalf of Standard Federal Savings and Loan. Taylor did not. Taylor and Management jointly executed a promissory note to Standard Federal, along with financing statements. In return Standard Federal advanced funds to Taylor to purchase inventory. After Taylor was adjudged bankrupt, Standard Federal attempted to assert a perfected security interest in Taylor's inventory. The trustee objected, contending that the debtor had not entered into a security agreement. The Bankruptcy Court agreed with the trustee, holding that although the intent to enter into a security agreement was clearly present:

> the mere intent to enter into such an agreement does not satisfy the Code requirement. Some writing or writings signed by the debtor must exist to establish that the debtor did in fact enter into such an agreement.

17 U.C.C.Rep. at 569. The Rhode Island Supreme Court faced a similar situation in *American Card*. The debtor and creditor had executed a promissory note and financing statement, but no security agreement. Further, the parties included in the agreed statement of facts the testimony of the creditor's collection agent that when he tried to collect the debt the debtor's treasurer had confessed the debtor's inability to pay. The treasurer then agreed to the execution of the note to be secured by the collateral listed in the financing statement. The Rhode Island Supreme Court held there was no security interest. 196 A.2d 151. The clarity of the parties' intent at the time is not the question, nor is the reliability of their deposition statements an issue. As the Eighth Circuit held in *Shel-*

*ton v. Erwin,* 472 F.2d 1118, 1119 (8th Cir.1973), the intent to create a security interest may be clear but it will fail unless the statutory requirements are met. The Eighth Circuit held that a bill of sale, a title application, and a certificate of title to an automobile, even taken together, failed to meet that standard.

■ The deposition statements of Temple and Van Sweden clearly show their intent to grant a security interest to Miller. Nonetheless, those statements must be barred as irrelevant. The question is not one of intent but of compliance. To the extent that the oral statements supply something missing from the written documents, to that same extent the oral statements create that which would not otherwise exist, the security agreement. The deposition statements must therefore be barred as purporting to create an oral security agreement in violation of U.C.C. § 9–203(1), M.S.A. § 19.9203(1), M.C.L.A. § 440.9203(1). If the written documents cannot stand alone, they do not stand at all.

## THE FINANCING STATEMENTS

The second question to resolve is whether the financing statements, shorn of the parol evidence, constitute security agreements. Miller and the plaintiffs executed two financing statements, identical except for the name, address, and signatures of the respective debtors. The form identified Associates and Leasing as the debtors, Miller as the secured party. Box Nine of each form is captioned "This financing statement covers the following types (or items) of property:" and both boxes are filled in with the typewritten phrase "All of debtor's fixtures, machinery and equipment now owned or hereafter acquired." Neither statement mentions a security interest, nor indicates whether a security agreement had been concluded or was yet pending.

Much of the foundation for this discussion has already been laid out above. However, those cases also raise a question the parties have not argued. The cases summarized above certainly stand for the proposition that two or more documents may be taken together as constituting a security agreement or creating a security interest: may these two financing statements taken together constitute a security agreement. The question is as easily dismissed as it is raised. The cases above found enforceable security agreements not because of the number of documents involved, but because each document was different and taken together each contributed a part to a whole. These two financing statements are identical; neither can contribute anything new to the other.

To decide whether a standard form financing statement may constitute a writing sufficient to satisfy the signed writing requirement of the Uniform Commercial Code we must turn to U.C.C. § 9–203(1), M.S.A. § 19.9203(1), M.C.L.A. § 440.9203 which reads in part:

> [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:
>
> (a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral...

Section 9–105(1), M.S.A. § 19.9105(1), M.C.L.A. § 440.9105(1) defines "security agreement" as:

> [A]n agreement which creates or provides for a security interest.

The Uniform Commercial Code at § 1–201(3), M.S.A. § 19.1201(3), M.C.L.A. § 440.1201(3) defines "agreement" as:

> [T]he bargain of the parties in fact as found in their language or by implication from other circumstances...

■ From these definitions it seems apparent that a security agreement must be a written bargain in language or implication which creates or provides for a security interest. Indeed, a security agreement may be created in fewer words than it takes to define one. *Morey Machinery Co., Inc. v. Great Western Industrial Machinery Company,* 507 F.2d 987 (5th Cir.

1975), held that usage of the wording "secured hereby" was sufficient to create a security agreement of a standard financing statement.

 The financing statements signed by the debtors and Miller, however, fail to meet that standard. Nothing in the language of the financing statements evidences a bargain, its terms, or any process of negotiation of a bargain. Nor does the language of those statements mention a security interest, the creation or provision of one, or allude to one. Nor is it tenable to argue that simply signing a financing statement implies all of the above. Uniform Commercial Code Section 9–402(1), M.S.A. § 19.9402(1), M.C.L.A. § 440.9402(1) permits a financing statement to be filed "before a security agreement is made or a security interest otherwise attaches." As the Fourth Circuit Court of Appeals held in *Mid-Eastern Electronics, Inc., v. First National Bank of Southern Maryland,* 380 F.2d 355 (4th Cir.1967) a standard financing statement alone does not create a security interest for it is but notice that such an interest is claimed, "a single step in the means by which the rights and priorities of a secured party are 'perfected' ... as the appellant can proffer no writing signed by the debtor giving, even sketchily, the terms of the security agreement it is unenforceable." 380 F.2d at 356. The Uniform Commercial Code clearly contemplates the attachment and perfection of a security interest as a series of steps that need not all be taken in the same order. To hold that the signing of a standard form financing statement implies a bargain which creates or provides for a security interest would be to collapse this process into one step and to render out the flexibility the U.C.C. seeks to create. Such a holding would threaten § 9–402 and contradict its plain meaning for a financing statement could never be filed before a security agreement is made if signing the financing statement implies a security agreement already exists. For these reasons this court will not infer the existence of a security agreement from the debtor's signing of the financing statements.

The defendant maintains that a properly executed and filed financing statement alone should satisfy the signed writing requirement of the Uniform Commercial Code. The defendant cites *In re McCormick,* 24 B.R. 718 (Bankr.Ct.E.D.Mich. 1982), as suggesting this result and as indicative of the status of Michigan law on this question. In *McCormick* the debtor had borrowed money to buy a car and noted the lender as a holder of a security interest in the car. The certificate of title therefore identified the lender as a secured creditor. The debtor and lender never executed a formal security agreement. After the debtor filed in bankruptcy, the trustee sought to avoid the lien by claiming that no enforceable security interest existed. Judge Brody of the Eastern District held that the application constituted a security agreement within the meaning of the Uniform Commercial Code and that when read together with the certificate they clearly satisfied the Code's security agreement requirement. 24 B.R. at 720. However, the principles of *McCormick* do not apply to this case for two reasons. The first is that the Michigan Motor Vehicle Act, which Judge Brody explicitly relied upon in his opinion, requires an applicant for title to name upon the application the names and addresses of those who presently hold a security interest in the vehicle (M.S.A. § 9.1917(c) [M.C.L.A. § 257.217(c)]). The Uniform Commercial Code section governing the contents of financing statements, § 9–402(1), however allows upon its face that those named as secured parties upon a financing statement may not yet hold a secured interest, for the security agreement may not be concluded nor the security interest attached as of filing. The second reason is that in *McCormick* Judge Brody was considering the adequacy of a Motor Vehicle Act § 9.1917 title application as a U.C.C. § 9.9203 security agreement. In *Taylor Mobile Homes, Inc.,* supra, he considered the adequacy of a U.C.C. § 9.9402 financing statement as a § 9.9203 security agreement and concluded it was inadequate. In *Taylor* Judge Brody held

that the promissory note and financing statements executed by the debtor did not contain any language creating or providing for a security interest. 17 U.C.C.Rep. at 569.

Other courts have reached the same conclusion. The *Bollinger* court expressed the opinion that financing statement is at best only inferential evidence the parties intended to conclude a security agreement. 614 F.2d at 928. In *Amex-Protein* the court accepted the principle that "a single piece of paper could not serve as a security agreement without containing the requirements for such," which the court decided was language such as "This note secured by a Security Interest." 504 F.2d at 1057, 1059. The *Numeric* court wrote that "... a standard form financing statement by itself can not be considered a security agreement." 458 F.2d at 1332. (See Also *In the Matter of Carmichael Enterprises, Inc.* 334 F.Supp. 94, 104 (N.D.Ga.1971), aff'd 460 F.2d 1405 (5th Cir.1972).)

Therefore, the court concludes that the financing statements executed by Associates, Leasing and Miller do not constitute security agreements for they do not create or provide for a security interest. Therefore they do not meet the standards of M.S.A. § 19.9203(1)(a) and M.S.A. § 19.-9105(1) [M.C.L.A. §§ 440.9203(1)(a), 440.-9105(1) ].

## CONCLUSION

The defendant's motion for summary judgment is denied.

The plaintiffs' motion for summary judgment is granted.